**AMERICAN FINANCE SYSTEM INCORPORATED and American Finance System Incorporated Profit Sharing Retirement Trust, by its Trustees, Plaintiffs and Counterdefendants,**

**v.**

**Thomas L. HARLOW, Individually and as representative of a class of persons similarly situated, Defendant and Counterplaintiff,**

**and**

**C. D. Pickrel, Jr., Defendant and Counterplaintiff-Intervenor,**

**and**

**Bradley H. Carter et al., Counterplaintiffs-Intervenors.**

**Civ. No. 71–651–HM.**

United States District Court,
D. Maryland.

Oct. 17, 1974.

---

See also D.C., 65 F.R.D. 572.

Joseph H. H. Kaplan, Baltimore, Md., John A. Cardon, Herbert L. Awe, Charles W. Gilchrist, Washington, D. C., for plaintiffs and counterdefendants.

Robert B. Fitzpatrick, Washington, D. C., and Kenneth L. Johnson, Baltimore, Md., for defendants, counterplaintiffs, and the intervening counterplaintiffs.

HERBERT F. MURRAY, District Judge.

This action for a declaratory judgment pursuant to 28 U.S.C. § 2201 was initiated by American Finance System, Inc. [hereinafter AFS] and the trustees of its Profit Sharing Retirement Plan and Trust Agreement [hereinafter the Trust] to determine whether they are compelled by Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., to distribute accumulated funds or "vested" shares in the Trust to certain former employees. Subject matter jurisdiction was founded on 28 U.S.C. § 1331(a) since the suit purportedly involved a substantial federal question under Title VII and the matter in controversy exceeds ten thousand dollars exclusive of interest and costs. While this Court has previously adjudicated several procedural questions pertaining to this lengthy and complex litigation in a Memorandum and Order filed on January 14, 1974 and in an oral opinion delivered on February 1, 1974, it is still confronted with additional motions of a preliminary nature from both parties. Before addressing the merits of the issues raised by each, it is again necessary to relate the background of this protracted lawsuit and the various contentions of both sides.

### I.

#### Background Facts

Established in 1955 as a voluntary and non-contributory pension plan[1] for

---

1. A non-contributory pension plan is one in which the employees make no financial contribution; the employer makes all contributions.

the benefit of AFS employees, the Trust is funded by the profits of AFS and its subsidiaries, which are allocated among the participating employees in proportion to their individual compensation. These funds and the continuing contributions of AFS are invested as a unit and the appreciation or depreciation in value of the Trust investments is adjusted on the accounts of participants on a formula basis. Each account reflects, therefore, the undivided interest in the Trust currently held by a participating present or former employee of AFS. The substantive disputes in this litigation arise from the continued refusal of AFS to distribute a participant's undivided interest in the Trust when he (or she) voluntarily terminates employment with AFS or its subsidiaries prior to a scheduled retirement, death, disability or the attainment of fifty years of age.

The first question resulting from a premature, yet voluntary, termination of employment is the amount of money due a departing employee from the corpus of the Trust. By its terms, the extent of an employee's "vested" share depends upon his (or her) length of service with AFS or its subsidiaries. For example, an employee with five years of service is vested with 25% of the amount allocated to his account, or, in other words, one quarter of his current undivided interest in the Trust which is normally available upon retirement from AFS. The second question concerns the date when the vested interest becomes payable to the participant who leaves AFS or its subsidiaries prior to his (or her) retirement date.[2] Under Article XI of the Trust adopted in 1955, a female employee who terminated prior to her retirement date was entitled to an immediate payment of her vested interest, while a male employee departing in the same

fashion was denied payment until his fiftieth birthday. Pending his attainment of age fifty, the male employee's vested share in the Trust remained frozen, but fully available for investment which generated profit for the benefit of the Trust.

On July 2, 1965, the Civil Rights Act of 1964 became effective to prevent an employer from "discriminat[ing] against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex . . . ." 42 U.S.C. § 2000e–2(a)(1). Recognizing that the age prerequisite for the payment of males could violate this provision of the Act, AFS amended the Trust, effective January 1, 1970, to eliminate any preference for females in the receipt of their vested shares. Now employees of both sexes must reach age fifty before they are eligible for distribution of their interest in the Trust.

Despite this "equalization" in the conditions for payment, the five and one-half year gap between the effective dates of the Civil Rights Act and the Trust amendment impelled AFS and the Trustees to file the present suit against two classes of former employees, represented by Thomas L. Harlow and C. D. Pickrel, and one class of current employees, represented by Edward Spellacy,[3] to determine whether the plaintiffs are legally obligated to pay those participants who terminated prior to reaching age fifty. Both Harlow and Pickrel have objected to the relief sought by this complaint and, to the evident surprise of the plaintiffs, each filed a separate counterclaim. Thereafter, this Court granted Harlow's motions to amend his counterclaim and the subsequent motions of Pickrel, Carter, Catlett and Hutchison to intervene in his

---

2. Normal retirement date is the first day of the month next following the participating employee's 65th birthday. A.F.S. Trust, Art. IX, as amended January 1, 1970.

3. Edward Thomas Spellacy was dismissed as a party by order of this Court dated June 27, 1972.

second amended counterclaim.[4] To remedy the plaintiffs' alleged violations of the Civil Rights Act and the Equal Pay Act of 1963, 29 U.S.C. § 206(d),[5] Harlow and the other representative parties have requested an injunction to compel the immediate distribution of their vested shares in the Trust plus interest and the vested shares of the former AFS employees they purportedly represent, and then the expenses, costs and reasonable attorney's fees of this litigation.

Certification of the proposed classes of defendants and counterclaimants under Rule 23 of the Federal Rules of Civil Procedure was delayed until AFS received responses from potential class members to a settlement offer supervised by this Court[6] pursuant to the Memorandum and Order dated January 18, 1974. Since the time specified by the Court for accepting the compromise has elapsed, it is now appropriate to consider the pending motions of both parties to certify the original complaint and the Harlow counterclaim as proper class actions, the related motion of AFS and the Trustees for permission to settle with class members who acted on their settlement offer after the deadline, and the motion of the Representative Parties to impose monetary sanctions on AFS for unreasonably refusing to answer interrogatories and to produce certain documents. Additionally, the original plaintiffs moved on April 22, 1974 to dismiss their complaint for declaratory relief pursuant to Rule 41(a)(1), to dismiss the Harlow counterclaim for lack of subject matter jurisdiction and, in the event jurisdiction was properly invoked by the Representative Parties, to certify a single class of counterclaimants comprised of those employees of AFS who terminated between July 2, 1965 and January 1, 1970. The Representative Parties have opposed each of these motions with varying degrees of vigor [7] and have now

4. By Order of this Court dated February 7, 1974.

5. Section 206(d)(1) of the Fair Labor Standards Act, which incorporated the Equal Pay Act, provides that "[n]o employer having employees subject to any provisions of this section shall discriminate . . . between employees on the basis of sex by paying wages to employees . . . at a rate less than the rate at which he pays wages to employees of the opposite sex in such establishment for equal work on jobs the performance of which requires equal skill, effort, and responsibility. . . . " According to the allegations of the Harlow counterclaim as amended, the unavailability of a male employee's vested share for a lengthier period of time means that he receives less real wages than his female counterpart.

6. In a letter dated February 22, 1974, counsel for AFS reported on the results of its settlement offer. As for those male employees who terminated before July 2, 1965, 98 accepted the compromise while 90 rejected or failed to respond. The former male employees departing between July 2, 1965 and January 1, 1970 were more receptive to the offer; 184 accepted whereas 64 rejected or failed to respond. As for those former employees who left after January 1, 1970 and prior to January 1, 1974, 284 accepted while 41 rejected or neglected to respond. Additionally, AFS sent the Court a list of 21 former employees from all three categories on April 4, 1974 whose acceptances were received after February 18, 1974, the date when the compromise became ineffective under the terms of the Court's order permitting the offer. The Court notes that the language is slightly ambiguous because it requires the former employees "to take action with respect to this matter by February 18, 1974." While the order implies that notice to the parties of the former employee's choice was required by this date, a layman proceeding without counsel could have assumed that his signature was sufficient. Therefore, the Court must allow AFS to settle with those persons who signed the release on or before February 18, 1974 after the Representative Parties are given an opportunity to inspect the dates and signatures.

7. More explicitly, they voice no particular opposition to dismissal of the declaratory judgment action by AFS and the Trustees if the status of their counterclaims is unaffected. Since this conclusion is not apparent or conceded by AFS despite the Representative Parties' assertion to the contrary, the Court has proceeded to discuss the merits of this motion.

requested a preliminary injunction to force AFS to distribute vested shares to all former employees who continue to prosecute the Harlow counterclaim.

## II.

### The Motions to Dismiss the Original Complaint and The Second Amended Counterclaim

■ At the outset, a voluntary dismissal of the action for a declaratory judgment by AFS and the Trustees is substantively connected to their simultaneous attack on the subject matter jurisdiction of this Court over the Harlow counterclaim. Illustration of this relationship begins with the provisions of Rule 41(a)(2) which generally prohibit the dismissal of a suit if the defendant objects and has pleaded a compulsory counterclaim, not supported by independent jurisdictional grounds, prior to service upon him of the plaintiff's motion to dismiss. Conversely, a voluntary dismissal is appropriate despite the defendant's objection where the counterclaim is either permissive or founded on separate jurisdictional grounds, or where there is no federal authority to adjudicate the plaintiff's claim. 5 Moore, Federal Practice ¶ 41.09.

Recognizing that the Equal Pay Act and Title VII causes of action probably constitute compulsory counterclaims under Rule 13(a)[8] and that their challenge to the Court's power over those same claims eliminated this basis for a voluntary dismissal of the original action, AFS and the Trustees contend that the complaint for declaratory relief now fails to allege subject matter jurisdiction because it no longer states an "actual controversy" within the meaning of 28 U.S.C. § 2201 and Article III, Section 2 of the United States Constitution. This assertion rests on a recent ruling by the Internal Revenue Service [hereinafter IRS] that any vested share must fluctuate with the value of the trust corpus when payment is deferred or the trust loses its tax exemption and on the offer of the Trustees to immediately distribute vested benefits without interest to all former employees of AFS. According to the original plaintiffs, these decisions and the amendment of the Trust eliminated the difference in the time of dissemination between former male and female employees and the unfairness from the Trustees' use of the vested shares without interest until a participant reaches age fifty. Since these distinctions precipitated their declaratory judgment action, AFS and the Trustees believe that their previous claims are moot.

■ The rough test for determining what constitutes an "actual controversy" was established by the Supreme Court in Lake Carriers' Association v. MacMullan, 406 U.S. 498, 92 S.Ct. 1749, 32 L. Ed.2d 257 (1972). There, Justice Brennan remarked that "[b]asically, the question in each case is whether . . . there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Id.* at 506–507, 92 S.Ct. at 1755, quoting from Maryland Casualty Co. v. Pacific Coal & Oil Co., 312 U.S. 270, 273, 61 S.Ct. 510, 512, 85 L.Ed. 826 (1941). A similar definition of this term is found in prior decisions of the Fourth Circuit. *See,* A. S. Abell Company v. Chell, 412 F.2d 712 (4th Cir. 1969); Fireman's Fund Insurance Co. v. Dunlop, 317 F.2d 443 (4th Cir. 1963).

8. Rule 13(a) reads in part that "[a] pleading shall state as a counterclaim any claim which at the time of serving the pleading the pleader has against any opposing party, if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim and does not require for its adjudication the presence of third parties of whom the court cannot acquire jurisdiction." Here, the Harlow counterclaims concern the operation of Article IX of the retirement Trust and the Trust as amended which is also the basis for the declaratory judgment action by AFS.

Application of these standards to this case necessitates an examination of the effect of the Trustees' offer and the IRS ruling on the allegations of the original complaint. In their prayer for relief, AFS and the Trustees requested a judgment that neither the Civil Rights Act of 1964 nor any other law requires the distribution of trust corpus to former employees who have yet to satisfy the age provisions of the Trust. Next, they asked that any court ordered distribution be limited to those former employees who terminated their services between the effective dates of the Civil Rights Act of 1964 and the amendment of the Trust, and were then denied payment of their shares. Finally, they sought to restrict such a distribution to the amount of a participant's allocable share in the Trust which is attributable to employer contributions after July 2, 1965. More explicitly, the purpose of this lawsuit was a declaration by the Court that the original Trust was free of the sex discrimination forbidden by Title VII or that the subsequent amendment had cured any defects. To minimize the legal consequences which could result from judicial disapproval of the sex-based eligibility restrictions in the earlier Trust for the receipt of benefits, the requested judgment was also designed to preclude future challenges by former employees to the retention of vested shares without interest by the Trustees and the "upward" revision of the age condition.

▆ In the Court's view, these claims for relief are not foreclosed by Revenue Ruling 73–103 or the immediate dissemination of benefits to former employees of AFS. First, the Revenue Ruling does not determine whether the former or the amended Trusts discriminate against males on the basis of sex within the meaning of Title VII. Second, the failure of either or both Trusts to comply with Title VII standards could compel AFS to distribute vested shares to all employees at the time of their termination despite the Ruling, the offer and the amendment. Third, the immediate payment of vested benefits to all former employees could include accrued interest if the retention of those monies violated the Civil Rights Act of 1964 prior to the Revenue Ruling. Since each of these questions was directly or implicitly raised by the original complaint of AFS and the Trustees, an "actual controversy" still exists under the Declaratory Judgment Act and a voluntary dismissal is unavailable on this theory. Notwithstanding this conclusion, the motion to dismiss can be granted if the original plaintiffs demonstrate that this Court lacks subject matter jurisdiction over the Harlow counterclaim.

To succeed with this second and related motion, AFS and the Trustees assert that the charges of sex discrimination contained in the counterclaim were not brought before the EEOC by Harlow or the other named counterplaintiffs within ninety days after the alleged unlawful practice as required by 42 U.S.C. § 2000e–5(e) and (f)(1). Next, they contend that the Court also lacks authority to adjudicate the Equal Pay Act cause of action because most members of the proposed class have failed to execute and file a consent pursuant to 29 U.S.C. § 216(b) which is purportedly a prerequisite to maintaining a class action under that statute. In opposition to these arguments, the Representative Parties state that the Trustees' refusal to distribute vested shares without interest to former employees constitutes a continuing violation of Title VII. Alternatively, they contend that charges were filed with the EEOC within 210 days[9] after the Trustees' discriminatory act of

---

9. Prior to the 1972 amendment of Title VII, 42 U.S.C. § 2000e–5(e) required a person aggrieved to file charges with the EEOC within thirty days after the allegedly unlawful employment practice unless those charges were first brought before a local agency created to investigate employment discrimination. Under the latter circumstances, the

amending "upward"' the age conditions of the Trust for the payment of females.[10]

■■ Preliminarily, it is settled law that a class action is not maintainable unless the class representative has filed timely charges of employment discrimination with the EEOC which reflect the complaints of the members to the extent required by Rule 23(a). Jenkins v. United Gas Corporation, 400 F.2d 28, 35 (5th Cir. 1968); Oatis v. Crown Zellerbach Corp., 398 F.2d 496, 499 (5th Cir. 1968); Sciaraffa v. Oxford Paper Company, 310 F.Supp. 891, 897 (D.Me.1970). Furthermore, it is equally undisputed that the ninety day limitation period is inapplicable if the alleged discrimination continues until the date a claim is brought before the EEOC. See, e. g., Macklin v. Spector Freight Systems, Inc., 156 U.S.App.D.C. 69, 478 F.2d 979 (1973); Belt v. Johnson, 458 F.2d 443 (5th Cir. 1972); Bartmess v. Drewry's U.S.A. Inc., 444 F.2d 1186 (7th Cir. 1971); Tippett v. Liggett & Myers Tobacco Company, 316 F.Supp. 292 (M.D. N.C.1970). Likewise, the Fourth Circuit has recognized in dicta that acts of past discrimination can be carried forward to injure a plaintiff by a present pattern of conduct. Robinson v. Lorillard Corporation, 444 F.2d 791 (4th Cir. 1971).

While AFS acknowledges these principles, it is also convinced that the final act of the purported sex discrimination against the named counterplaintiffs occurred when they terminated their employment and were refused retirement benefits by the Trustees. To support this theory, AFS cites Phillips v. Columbia Gas of West Virginia, Inc., 347 F. Supp. 533 (S.D.W.Va.1972) where Chief

Judge Cristie held that a firing is a single act of employment discrimination without continuing effect because it ends any relationship between the plaintiff and the defendant. Additionally, AFS contends that McCarty v. Boeing Company, 321 F.Supp. 260 (W.D.Wash. 1970) directly refutes the argument that the operation of a purportedly biased retirement plan constitutes continuing discrimination from the date of termination to the present. In that case, the court dismissed the charges of former employees which were not brought within ninety days of their retirement to protect the employer from the danger of stale claims in the distant future.

Other decisions indicate, however, that an illegal practice continues whenever the released employee has a bare possibility of recall or reconsideration for promotion to a certain job position. Cox v. United States Gypsum, 409 F.2d 289 (7th Cir. 1969); Jamison v. Olga Coal Company, 335 F.Supp. 454 (S.D.W. Va.1971); Banks v. Lockheed-Georgia Company, 46 F.R.D. 442 (N.D.Ga.1968). In Macklin v. Spector Freight Systems, supra, Judge Wright remarked:

> As we read appellants' initial . . . complaints to the EEOC, they attack Spector and the local, not merely for an isolated refusal of employment occurring in early 1967, but for maintaining and supporting a discriminatory hiring system throughout 1967 and 1968. Allegations that a discriminatory hiring system continues to exist and continues to deny appellants jobs are sufficient to constitute a timely filing with the agency. . . . Thus this case appears similar to Cox v. United States Gypsum . . . where the court found a con-

---

person aggrieved had two hundred and ten days to file with the EEOC. Those time periods have now been increased to ninety and three hundred days, respectively.

10. "Upward" amendment refers to the Harlow charge that the change in the Trust,

which conditions eligibility for males and females on the attainment of age fifty, merely perpetuates the effect of past discrimination against males and, as a consequence, illegally deprives female former employees of their vested benefits.

tinuing violation in a layoff situation. *Cox* stressed that a layoff, as distinguished from a discharge or quitting, tends to suggest a possibility of re-employment and a claim of continuing discrimination 'readily suggests that he claims there has been subsequent recall or a new hiring which discriminates against him. . . .' In short, the claim that the action was not timely commenced is well taken because one isolated incident is not being challenged but rather an entire allegedly discriminatory system. *Id.* at 987.

Besides permitting an attack on a broad system of race bias, the opinion also excused the plaintiffs from making repeated requests for reemployment because such inquiries were demonstrably futile.

Even more on point are Mixson v. Southern Bell Telephone and Telegraph Co., 334 F.Supp. 525 (N.D.Ga.1971) and Kohn v. Royall, Koegel & Wells, 59 F.R. D. 515 (S.D.N.Y.1973) where continuing systems of discrimination with minimal personal effect on the plaintiffs tolled the statutory limitations period. In *Mixson,* the plaintiff was refused the retirement benefits of her deceased husband who suffered a heart attack two months before he reached age sixty, the eligibility age for males, whereas females were entitled to the same amount at age fifty-five under the plan. Although the charge of discrimination was filed with EEOC more than ninety days after the husband's death, Judge Edenfield rejected the defendant's argument that the complaint was untimely because the terms of the retirement plan still barred the plaintiff from receiving any benefits. Similarly, the plaintiff in *Kohn,* a female law student who was allegedly denied a summer position with a

law firm on the basis of her sex, was allowed to prosecute charges of discrimination which were submitted to the EEOC beyond the 210 day limitations period even though the job was no longer available.[11] There, Judge Lasker commented that the refusal to hire "forms one item in an ongoing series of violations with respect to the class, the many elements of which are linked by their common source—employer discrimination." *Id.* at 518.

From these decisions, it appears that isolated acts of discrimination and continuing patterns of bias only toll the ninety day limitations period of 42 U.S. C. § 2000e–5(e) where the unlawful practices have a present and recurring effect on the plaintiff-class representative. This conclusion enables the Court to distinguish Phillips v. Columbia Gas of West Virginia, Inc., *supra,* on grounds that the plaintiff failed to demonstrate the continued effect of his firing. As for McCarty v. Boeing Company, *supra,* it is apparent that this decision was unsupported by the vast majority of the precedent on the question which is reflected by the lack of pertinent citation in the opinion. Furthermore, other courts have denigrated the importance of strict enforcement of the limitations period when the employer implements a wide-spread system of discrimination in violation of Title VII. *See, e. g.,* Jamison v. Olga Coal Company, *supra;* Watson v. Limbach Company, 333 F.Supp. 754 (S.D.Ohio 1971).

Here, four of the five named counter-plaintiffs have instituted charges against AFS with the EEOC. Harlow departed AFS on February 24, 1967, requested and was refused distribution in late 1969 or early 1970, and brought his claim of sex discrimination

---

11. The employment opportunity was no longer available because the charges were brought in November and the plaintiff, as a third year law student, would be seeking a permanent position in the Spring which is arguably governed by different and nondiscriminatory criterion. The *Kohn* court properly stated, however, that a law firm discriminating against a female applicant for a summer job would probably continue this practice when it sought permanent associates.

before the EEOC on February 5, 1970. Likewise, Carter, Catlett and Hutchison commenced EEOC proceedings more than ninety days from their termination dates.[12] Liberally construing the allegations of the Harlow counterclaim, the Court finds that the provisions of the prior and the amended retirement trusts still prevent these four Representative Parties from collecting their vested shares. By establishing a Trust with a deferred payment schedule for certain employees, AFS and the Trustees entered into a fiduciary relationship with those employees that continues until the final distribution of an individual's benefits. And like the plaintiffs challenging discriminatory lay-offs and promotion policies, the possibility always exists of a change in the terms of the ongoing relationship if the purported bias is voluntarily eliminated. Additionally, the counterclaim evidences the attempt of AFS to preserve the earlier discrimination against males by relating the repeated refusals of the Trustees to distribute shares prior to age fifty and the "upward amendment" of the Trust provisions. Based on these averments, the Court concludes that Harlow has satisfied the jurisdictional prerequisites of Title VII and that the motion of AFS to dismiss the Civil Rights Act cause of action within his counterclaim must be denied.

The amended Harlow counterclaim also contains a claim under the Fair Labor Standards Act of 1938, 29 U.S.C. § 201 et seq., as amended by the Equal Pay Act, alleging that the earlier receipt of benefits by female employees of AFS prior to the amendment of the Trust constitutes wage discrimination against males within the meaning of 29 U.S.C. § 206(d). More explicitly, he argues that the females were paid higher real wages because the male employees were deprived of interest and the use of their vested share until they reached age fifty by the terms of the Trust.

Subject matter jurisdiction over an Equal Pay Act cause of action is governed by 29 U.S.C. § 216(b), which provides:

[a]ny employer who violates the provisions of section 206 or section 207 of this title shall be liable to the employee or employees affected in the amount of their unpaid . . . wages . . . and in an additional equal amount as liquidated damages. Action to recover such liability may be maintained in any court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated. No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.

In this case, the Representative Parties and Collins Gilbert, another former employee of AFS, have filed a written consent with this Court and subject matter jurisdiction was properly invoked over their claims. But the authority of the Court to adjudicate their contentions does not determine whether these persons can represent a Rule 23 class consisting of persons with identical charges of wage discrimination on the basis of sex who have not submitted the necessary consent forms. A second question is whether the notice to any Title VII class formed by the Court should include a "solicitation" of such consents through an explanation of the pendent cause within the Harlow counterclaim and the applicable limitations period.[13] Before

12. With the exception of Pickrel, who has not instituted charges before the EEOC, the named counterplaintiff-intervenors have received notice of their right to bring a civil action against AFS and the Trustees.

13. According to 29 U.S.C. § 255(a), an action to enforce the provisions of the Fair Labor Standards Act must be commenced within two years after the cause of action accrued unless the violation was willful for

addressing these jurisdictional issues connected to the establishment of an Equal Pay Act class, the Court must first consider the validity of various motions by AFS and the Representative Parties to certify widely differing classes of Civil Rights Act defendants and counterplaintiffs under Rule 23(c).

## III.

### Class Certification
### A.
### Title VII

In their original complaint for declaratory relief, AFS and the Trustees proffered two classes of Civil Rights Act defendants:

(1.) [t]hat class of male employees who terminated employment prior to July 2, 1965, and who have not received a distribution of their vested interests in the Trust because they have not reached age 50, died or become disabled; and

(2.) [t]hat class of male employees who terminated subsequent to July 2, 1965 and prior to January 1, 1970 and who did not receive a distribution of their vested interests in the Trust because they have not reached age 50, died or become disabled.

The Representative Parties have sought certification of seven subclasses of counterclaimants under the Equal Pay Act and Title VII:

(a) All male persons formerly employed by American Finance and any of its subsidiaries who were participants within the meaning of Article IV of the Profit Sharing Retirement Plan and Trust Agreement (hereinafter Trust Agreement) and who during the period December 31, 1955 through July 1, 1965, have terminated their employment prior to their normal retirement date as defined by Article IX of the Trust Agreement and prior to the age of fifty (50), and who were ineligible both prior and subsequent to July 1, 1965, and who are still ineligible under Article XI(3) of the Trust Agreement to receive their vested interest in the Trust Agreement because they have not attained the age of fifty.

(b) All male persons formerly employed by American Finance or any of its subsidiaries who were participants within the meaning of Article IV of the Trust Agreement and who, during the period December 31, 1955, through July 1, 1965, have terminated their employment prior to their normal retirement date as defined by Article IX of the Trust Agreement and prior to the age of fifty (50), and who became eligible to receive their vested interest in the Trust Agreement subsequent to July 2, 1965.

(c) All male persons formerly employed by American Finance and any of its subsidiaries who were participants within the meaning of Article IV of the Trust Agreement and who during the period July 2, 1965 through December 31, 1969, have terminated their employment prior to their normal retirement date as defined by Article IX of the Trust Agreement and prior to the age of fifty (50) and who are still ineligible under Article XI(3) of the Trust Agree-

---

which a three year limitations period is applicable. In this case, a substantial question is whether the causes maintained by Harlow, Pickrel and Carter were brought within either limitations period. Additionally, this statute of limitations continues to run against those former employees who have not filed consents with this Court and the potential loss of interest to class members, unaware of this litigation, has generated the request that the notice contain such information.

ment to receive their vested interest in the Trust Agreement because they still have not attained the age of fifty (50).

(d) All male persons formerly employed by American Finance or any of its subsidiaries who were participants within the meaning of Article IV of the Trust Agreement and who during the period July 2, 1965, through December 31, 1969, have terminated their employment prior to their normal retirement date as defined by Article IX of the Trust Agreement and prior to the age of fifty (50), and who became eligible to receive their vested interest in the Trust Agreement subsequent to July 2, 1965.

(e) All male and female persons formerly employed by American Finance and any of its subsidiaries who were participants within the meaning of Article IV of the Trust Agreement, and who during the period January 1, 1970, to the present, have terminated their employment prior to their normal retirement date as defined by Article IX of the Trust Agreement and prior to the age of fifty (50), and who are still ineligible under Article XI of the Trust Agreement to receive their vested share in the trust fund because they still have not attained the age of fifty (50).

(f) All male and female persons formerly employed by American Finance and any of its subsidiaries who were participants within the meaning of Article IV of the Trust Agreement, and who during the period January 1, 1970, to the present have terminated their employment prior to their normal retirement date as defined by Article IX of the Trust Agreement and prior to the age of fifty (50), and who be-

came eligible to receive their vested share in the trust fund subsequent to the date of their termination.

(g) All male and female persons currently employed by American Finance and any of its subsidiaries who are or could become participants within the meaning of Article IV of the Trust Agreement and who would be ineligible under Article XI of the Trust Agreement to receive their vested share if they terminated prior to the age of fifty (50).

Both AFS and the Representative Parties initially agree that a class pursuant to Rule 23(b)(2) is the appropriate vehicle for the adjudication of Civil Rights Act claims and counterclaims. Such a class designation is proper where, as alleged by the parties herein, "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive or corresponding declaratory relief with respect to the class as a whole. . . ." 28 U.S.C. Rule 23(b)(2). According to the Advisory Committee Notes, various suits in the civil rights area, when a party is charged with unlawfully discriminating against a class, illustrate the correct use of Rule 23(b)(2). This comment is reflected by the numerous decisions involving claims of employment discrimination based on race or sex where Rule 23(b)(2) was the operative class vehicle. *See e. g.*, Jenkins v. United Gas Corporation, *supra*; Oatis v. Crown Zellerbach Corporation, *supra*; Laffey v. Northwest Airlines, Inc., 321 F.Supp. 1041 (D.D.C.1971). Moreover, while Rule 23(b)(2) is usually characterized as a means for plaintiff actions against a nonclass defendant, the purported sex discrimination by the Trust provisions applies to a broad group of former employees of AFS and this fact makes declaratory relief through a class action a permissible procedure in this

case. *See generally,* United States v. T. I.M.E.–DC, Inc., 335 F.Supp. 246 (N.D. Tex.1971); Washington v. Lee, 263 F. Supp. 327 (M.D.Ala.1966).

The next inquiry is whether the single class of defendants now proposed by AFS and the seven subclasses of counterplaintiffs offered by the Representative Parties satisfy the four prerequisites of Rule 23(a). Since the Court is also empowered by Rule 23(c)(4) to redefine classes *sua sponte* prior to certification,[14] it is necessary to first discuss the rationales for the formation of new classes as they relate to the standards of Rule 23(a). *See,* Dolgow v. Anderson, 43 F.R.D. 472, 492 (E.D. N.Y.1968), rev'd on other grounds, 438 F.2d 825 (2nd Cir. 1970); Johnson v. American General Insurance Co., 296 F. Supp. 802 (D.D.C.1969); Wright & Miller, Federal Practice and Procedure, Civil § 1790.

■ In this regard, an important factor governing the dissolution of classes and the establishment of new classes is the existence of any antagonism or conflicts of interest within the overall group which would compel a different configuration to adequately protect the rights of all class members. *See* Northern Natural Gas Co. v. Grounds, 292 F. Supp. 619, 634 (D.Kan.1968), rev'd on other grounds in part, 441 F.2d 704 (10th Cir. 1971), cert. denied, 404 U.S. 951, 92 S.Ct. 268, 30 L.Ed.2d 267 (1971); Seligson v. Plum Tree, Inc., 55 F.R.D. 259, 261–262 (E.D.Pa.1972); Frankel v. Wylie & Thornhill, Inc., 55 F.R.D. 330, 334 (D.W.Va.1972). To ac-

complish this result, the Court must examine the nature of the claims raised by the individuals comprising a certain class. An additional consideration is the ability of a single class representative and his counsel to vigorously advocate the personal interests of the class members without further subdivision. Benzoni v. Greve, 54 F.R.D. 450, 454 (S.D. N.Y.1972); Price v. Skolnik, 54 F.R.D. 261, 266 (S.D.N.Y.1971).

■ The concern with antagonism between class members similarly underlies the prerequisites of Rule 23(a) with the exception of the numerosity requirement which is concededly satisfied by the proposed classes and subclasses of Civil Rights Act defendants and counterplaintiffs absent those former employees who accepted the compromise offer of AFS.[15] First, Rule 23(a)(2) requires the existence of questions of fact or law common to the claims of the class and its representative. Here, AFS argues that the Harlow counterclaim fails to satisfy this requisite because employees who terminated prior to the effective date of the Civil Rights Act are not protected by Title VII and because those who departed after January 1, 1970 must challenge the validity of the Trust Amendment. Despite these assertions, it is settled law that commonality is satisfied where the question of law linking the class members is substantially related to the resolution of the litigation even though the individuals are not identically situated. *See, e. g.,* Harris v. Palm Springs Alpine Estates, Inc., 329 F.2d 909 (9th Cir. 1964); In Re Cae-

14. Through the "housekeeping" powers conferred on the district court by Rule 23(d), a class may be subdivided, certified as to certain issues, and, impliedly, combined with other proposed classes within the meaning of Rule 23(c)(4).

15. According to the report of AFS, those former employees rejecting the compromise offer or failing to respond total 195. Seven others never received the offer because the registered letter was not delivered. Quite

clearly, this number of potential class members scattered throughout the country makes joinder impractical and the formation of either one or more classes of defendants and counterplaintiffs would satisfy the numerosity requirements of Rule 23(a)(1). This conclusion is buttressed by the existence of several prospective class members whose address remains unknown to the parties and possibility of a subsequent attack on the terms of the settlement by the Representative Parties.

sars Palace Securities Litigation, 360 F. Supp. 366 (S.D.N.Y.1973); Siegel v. Realty Equities Corp. of New York, 54 F.R.D. 420 (S.D.N.Y.1972); Gerstle v. Continental Airlines, Inc., 50 F.R.D. 213 (D.Colo.1970).

■ Applying this principle to the allegations of Harlow's amended counterclaim, it appears to the Court that the issue of the legality of Article XI under the provisions of Title VII is common to the seven subclasses proposed by the Representative Parties. This question surely controls the rights of those former male employees to compel immediate dissemination of vested shares and the payment of interest whether they left AFS before or after 1965. The Court finds little merit in the argument by AFS that employees who terminated before Title VII became effective are unable to protest continued discrimination which directly affects their interest. As for the employees who departed AFS after the Trust was amended, it is clear that their claims are defeated unless they first demonstrate that the original Trust violated the Civil Rights Act. Absent this determination, these persons are precluded from contending that the "upward" amendment of the age condition perpetuates past sex discrimination.[16]

■ Second, Rule 23(a)(3) declares that the claims or defenses of the representative parties must be typical of the claims or defenses of the class. Generally, this requirement is met if there is no antagonism between the claims of the representative and the other members of the class. Thomas v. Clarke, 54 F.R.D. 245 (D.Minn.1971); 3B Moore Federal Practice ¶ 23.06. Although most courts have found compliance with Rule 23(a)(3) without persuasive explanation, Judge Roszel C. Thomsen of this Court has recently formulated some standards which give content to this prerequisite. In Re Four Seasons Securities Laws Litigation, 59 F.R.D. 667 (W.D.Okl.1973). According to his construction:

[T]he requirement of Rule 23(a)(3) is that the claim of the representative parties be 'typical' of the claims of the class, and that Rule 23(a)(3) does not require that the claims of the class representatives be 'co-extensive with' or 'identical to' those of the other class members. The requirement of typicality may be satisfied even though varying fact patterns support the claims or defenses of individual class members or there is a disparity in the damages claimed by the representative parties and the other members of the class. *Id.*, 59 F.R.D. at 681.

In this case, the charge of the representative party, Harlow, is sex discrimination in terms of a Trust regulating the distribution of retirement benefits and

16. AFS has also argued that Harlow's charge of discrimination before the EEOC neglected to challenge the validity of the Trust Amendment and that this oversight precludes him from now questioning its legality in a complaint to this Court. The short answer to this assertion is the allegation of continuing discrimination by Harlow's EEOC claim which encompasses an amendment which purportedly perpetuates past discrimination. This result is explicitly approved by Oubichon v. North American Rockwell Corp., 482 F.2d 569, 571 (9th Cir. 1973).

Likewise, the reason the Court attaches little significance to whether a male employee of AFS terminated before or after July 2, 1965 is the clear precedent in the Fourth Circuit for construing the Civil Rights Act as a remedy for the present and continuing effects of past discrimination. Robinson v. Lorillard Corp., *supra;* Quarles v. Philip Morris, Inc., 279 F.Supp. 505 (E.D.Va. 1968). If, however, the future course of this litigation reveals the significance of this date, the Court has ample authority to alter or amend any class orders to conform to the scope of the suit and to obviate any problems in managing the action. 28 U.S.C. Rule 23(d). *See,* Alameda Oil Co. v. Ideal Basic Industries, Inc., 326 F.Supp. 98, 105 (D.Colo.1971); Baxter v. Savannah Sugar Refining Corp., 46 F.R.D. 56, 60 (S.D.Ga. 1968).

this claim clearly encompasses the amended Trust as a manifestation of recurring and present violations of Title VII.

Comparing this claim to those of the members of the seven subclasses, the Court finds that each is challenging the age and sex distinctions drawn by the terms of the earlier Trust and effectuated by the amendment. It believes, however, that certain conflicts of interest exist between Harlow and the present employees of AFS or its subsidiaries who are now or could become participants in the Trust and are ineligible for benefits until they reach age fifty.[17] The reason for this potential antagonism is the possibility that an immediate distribution would disadvantage current and prospective participants in the Trust by diminishing the total value of the assets. On the other hand, many of these current employees could leave AFS prior to reaching age fifty so the elimination of the age condition would inure to their benefit. But this distinction is based on speculation concerning the individual intent of the current employees of AFS and is insufficient to satisfy Rule 23(a)(3). Thus, the Court must refuse to certify a subclass of Civil Rights Act counterplaintiffs comprised of current AFS employees or to include them in any class subsequently approved by this opinion.

Having disposed of this group, the Court further concludes that Harlow and his attorneys will fairly and adequately represent the interests of the other six subclasses of counterplaintiffs. In Eisen v. Carlisle and Jacquelin, 391 F.2d 555 (2d Cir. 1968), Judge Medina discussed the standard of advocacy required by Rule 23(a)(4):

> An essential concomitant of adequate representation is that the party's attorney be qualified, experienced and generally able to conduct the proposed litigation. Additionally, it is necessary to eliminate so far as possible the likelihood that the litigants are involved in a collusive suit or that plaintiff has interests antagonistic to those of the remainder of the class.

Other courts have observed that the representative attorney must have the ability and skill to wage a vigorous battle in the prosecution of the litigation. Thomas v. Clarke, *supra*; Dolgow v. Anderson, *supra*. Under these tests, it is clear that Harlow's counsel qualifies as a forceful, experienced and diligent advocate and that the danger of collusion is virtually nonexistent.

Since each of six remaining subclasses of Civil Rights Act counterplaintiffs satisfies the requirements of Rules 23(a) and (b)(2) and since their interests are not antagonistic, the Court believes that these divisions should be combined into one class of counterplaintiffs represented by Thomas Harlow. Excluded from this new class are those former employees of AFS, regardless of termination date, who have signed valid releases in exchange for the distribution of their vested shares pursuant to the compromise supervised by this Court or the attainment of age fifty.[18] Additionally, the Court must certify a single class of Civil Rights Act defendants consisting of those former male employees who left AFS before January 1, 1970 and have yet to reach age fifty because this group also meets the prerequisites of Rule 23(a) and there is no conflict between the members. This finding is supported by approval of an almost identical Harlow subclass prior to redefinition and the lack of opposition by the Representative Parties.

---

17. This group is subclass g of the divisions proposed by the Representative Parties. The antagonism would also affect the adequacy of representation by Harlow's counsel who is obliged to argue for an immediate distribution of vested shares.

18. The Representative Parties are still free to attack the validity of the releases signed by former employees who have reached age fifty and the fairness of the compromise offered by AFS under the supervision of this Court.

## B.

### The Equal Pay Act

 Notwithstanding the appropriateness of certifying single classes of Title VII defendants and counterplaintiffs, the Court is equally convinced that formation of an Equal Pay Act class of counterplaintiffs is not permitted by the cases interpreting 29 U.S.C. § 216(b).[19] In Sims v. Parke Davis & Co., 334 F. Supp. 774, aff'd 453 F.2d 1259 (6th Cir. 1971), cert. denied, 405 U.S. 978, 92 S. Ct. 1196, 31 L.Ed.2d 254 (1972), Chief Judge Freeman held that a class action under Rule 23 cannot be brought for violation of the Fair Labor Standards Act, which includes the Equal Pay Act, because the provisions of 29 U.S.C. § 216(b) limit the binding effect of judgments to those who have filed written consent to become parties to the suit. See, Maguire v. Trans World Airlines, Inc., 55 F.R.D. 48 (S.D.N.Y.1972). This result was recently confirmed in Hull v. Continental Oil Company, 58 F.R.D. 636 (S.D.Tex.1973) where a plaintiff was prohibited from maintaining a class action under Rule 23 without the consents of the persons he sought to represent on charges of age discrimination. In both *Maguire* and *Hull*, the courts intimated that a statutory "class action" was only permitted by 29 U.S.C. § 216(b) independent of Rule 23 to the extent that other prospective plaintiffs have submitted consents and that judicial approval was unnecessary to prosecute such a suit. Since these principles are clearly applicable to this case, the Court must deny the motion of the Representative Parties to certify the proffered subclasses of Equal Pay Act counterplaintiffs pursuant to Rule 23.

## C.

### Notice

 The qualification of single classes of Civil Rights Act defendants and counterplaintiffs under the standards of Rule 23(a) necessitates a determination under Rules 23(c) and (d) of whether the members of either class are entitled to further notice of the litigation; whether such a communication should include a solicitation of the consent forms required for the maintenance of a representative action under the Equal Pay Act; and whether the Representative Parties or AFS should bear the cost of the notice. Analysis of the first and controlling question begins with the language of Rule 23(c)(2), which mandates the "best notice practicable under the circumstances, including individual notice to members who can be identified through reasonable effort"; Rule 23(c)(2)(A)–(C) also states that "[t]he notice shall advise each member that (A) the court will exclude him from the class if he so requests by a specified date; (B) the judgment . . . will include all members who do not request exclusion; and (C) any member who does not request exclusion may . . . enter an appearance through his counsel." But the conditions of Rule 23(c)(2) only apply to class actions brought under Rule 23(b)(3), and the other provisions of Rule 23(c) are silent on the need to communicate similar information to members of a Rule 23(b)(2) class.

While many courts have ruled that notice is either unnecessary or discretionary when a class is certified under Rule 23(b)(2), the Second Circuit has held that procedural due process requires some communication to the included individuals through the broad "housekeeping" powers conferred on the district courts by Rule 23(d)(2). Eisen v. Carlisle & Jacquelin, *supra*, 391 F.2d at 564–565. Other decisions have found, however, that due process is satisfied without individual notice if the class representative is experienced and has no conflict of interest with class mem-

---

19. The Court notes that the Representative Parties sought certification of five Equal Pay Act subclasses consisting of the same former and current employees covered by its proposed subclasses of Civil Rights Act counterplaintiffs.

bers. Yaffe v. Powers, 454 F.2d 1362, 1366 (1st Cir. 1972); Lynch v. Household Finance Corporation, 360 F.Supp. 720, fn. 3 (D.Conn.1973); Johnson v. City of Baton Rouge, Louisiana, 50 F.R. D. 295, 301 (D.La.1970). This second view is supported by the treatise of Professor Moore. 3B Moore, Federal Practice, ¶ 23.55. A middle ground involves discretionary notice by publication, but this method of communication is particularly inappropriate where, as here, the class members are scattered throughout the country. *See,* Harper v. Mayor and City Council of Baltimore, 359 F.Supp. 1187 (D.Md.1973).

Notwithstanding the force of the due process argument, this Court must adopt the view of Judge Kaufman of this district in Vaughns v. Board of Education of Prince George's County, 355 F.Supp. 1034 (D.Md.1972) that notification is not required if a class action is brought under Rule 23(b)(2). *See also,* Francis v. Davidson, 340 F.Supp. 351 (D.Md. 1972). Furthermore, the Supreme Court has impliedly confirmed this result in Eisen v. Carlisle & Jacquelin, 417 U.S. 156, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974).

█ The only difficulty with this conclusion relates to the prayer of the Representative Parties for accrued interest which could be equated with a demand for damages. Damages, however, usually depend on the injury suffered by the individual class member whereas persons belonging to the single class of counterplaintiffs are eligible for a vested share of an undisputed amount if the Representative Parties succeed on the merits. Although the rate of interest might cause some controversy between the parties, this percentage figure is unrelated to the personal claims of an individual which lie at the heart of the due process requirement. Additionally, the Court notes that each person in both classes certified by this opinion was notified of the litigation through the compromise offer of AFS which included the arguments of the Representative

Parties for the continued prosecution of the suit. While the contents of the settlement offer did not explain the options usually available to a Rule 23(b)(3) class member, it informed the former employees that the age and sex differential of the Trust was being challenged under Title VII for their benefit, presented the positions of both sides, suggested they consult with their attorneys and permitted them to communicate with counsel for the Representative Parties. Again, the Court believes that this procedure comports with the requirements of due process.

Based on this conclusion and the unavailability of the class action device for the litigation of Equal Pay Act claims, the Court is also compelled to reject the suggestion by the Representative Parties that notice of the Civil Rights Act case contain a discussion of the consent procedures under 29 U.S.C. § 216(b) and the applicable limitations period governing such suits. Furthermore, this ruling moots the question of which party should pay the expense of notification.

## IV.

### *Motion of the Representative Parties to Impose Monetary Sanctions Against AFS*

█ Rule 37(a)(4) provides that "[i]f the motion [compelling discovery] is granted, the court shall, after an opportunity for hearing, require the party or deponent whose conduct necessitated the motion or the party or attorney advising such conduct or both of them to pay to the moving party the reasonable expenses incurred in obtaining the order, including attorney's fees, unless the court finds that the opposition to the motion was substantially justified or that other circumstances make an award of expenses unjust." While this Court is concerned about frivolous resistance to necessary discovery procedures; Humphrey's Exterminating Company, Inc. v. Poulter, 62 F.R.D. 392 (D.Md. 1974), the letter from counsel of the Representative Parties dated June 24,

1974 only states that the parties agree to waive oral argument on the pending motions without describing the nature of each. Since the opponents of a motion to compel the production of documents and the answers to interrogatories are usually entitled to a hearing before sanctions are assessed, the Court is unable to apply the terms of the general waiver to this specific right unless it receives more explicit authorization from AFS. *See,* Mixon v. Southern Bell Tel. & Tel. Co., *supra.* If such a waiver is not offered by AFS within ten days of the date of this Opinion and Order, the Court will then schedule a hearing on the request for monetary sanctions.

## V.

*Preliminary Injunction Against AFS*

This motion to compel the immediate distribution of vested shares to the remaining class members presupposes a ruling on the merits in favor of the Representative Parties since the relief sought herein is identical to the remedy requested by the counterplaintiffs under the Civil Rights Act of 1964. Moreover, AFS originally brought this action for a declaratory judgment that immediate distribution was not required by the provisions of Title VII. In the Court's view, the interests of the remaining class members are protected from the "retribution" of AFS if distribution of their vested share occurs at age fifty. Moreover, any equitable relief is only available where the Representative Parties demonstrate that AFS intentionally placed these shares in a less favorable economic position than those of the other participants in the Trust. Absent such proof, the charge of retaliation lacks substance and this motion becomes an attempt to deprive AFS of a trial on the charge of sex discrimination. In this regard, however, the Court notes that this litigation is almost three years old and the parties, particularly AFS, are still engaged in pretrial maneuvers designed to delay a resolution of the merits. From this point forward, the

parties are warned against unreasonably dilatory motions and are reminded of the wide range of sanctions given to this Court to cure such "defenses".

It is, therefore, this 17th day of October, 1974, by the United States District Court for the District of Maryland,

Ordered:

(1) that the motion of AFS to dismiss their original action for a declaratory judgment is hereby denied;

(2) that the motion of AFS to dismiss the Harlow Civil Rights Act counterclaim for lack of subject matter jurisdiction is hereby denied;

(3) that the motion of AFS to dismiss the individual Equal Pay Act actions of the counterplaintiff Harlow, and the intervenors and any other former employee of AFS, who files the consent required by 29 U.S.C. § 216(b) with the Clerk of this Court, is also denied;

(4) that the earlier motion of AFS to certify two classes of Civil Rights Act defendants pursuant to Rule 23(b)(2) is granted, as modified by the terms of this Opinion;

(5) that the motion of AFS for permission to settle with class members who were late in accepting its compromise offer is denied as to those persons signing the release after February 18, 1974 and granted as to those persons who signed the release prior to February 18, 1974 subject to the right of the Representative Parties to inspect the dates and signatures;

(6) that the motion of the Representative Parties to certify seven subclasses of Civil Rights Act counterplaintiffs is also granted under Rule 23(b)(2), as modified by the terms of this Opinion;

(7) that the motion of the Representative Parties to certify certain classes of Equal Pay Act counterplaintiffs is denied;

(8) that the motion of the Representative Parties for a preliminary injunction to compel AFS to immediately distribute vested shares to the remaining

class members regardless of age is also denied; and

(9) that the motion of the Representative Parties to impose sanctions is deferred pursuant to the terms of this Opinion.