Robert T. BECHER, Roger Hennessey, Kenneth Hutcheson, Daniel McDiarmid, Paul Morea, Robert Pohalski, Joseph Rosato and John Thalman, for themselves and all others similarly situated, Plaintiffs,

v.

LONG ISLAND LIGHTING COMPANY, Retirement Income Plan of Long Island Lighting Company and its predecessor plans, and Robert X. Kelleher, Defendants.

No. 95 CV 1994.

United States District Court, E.D. New York.

Jan. 6, 1996.

146

Weil Gotshal & Manges by Jeffrey S. Klein, James W. Quinn, Nicholas J. Pappas, New York City, Curto Barton and Alesi by Anthony V. Curto, Barbara Shaheen Alesi, Joseph P. Glynn, Melville, New York, for Plaintiffs.

Leboeuf, Lamb, Greene & Macrae, L.L.P. by Michael Lesch, Frank Cummings, Katherine S. Kamen, New York City, Long Island Lighting Company by Leonard P. Novello, General Counsel, Stephen W. McCaffrey, General Counsel, Hicksville, New York, for Defendants.

SPATT, District Judge:

This case arises out of a claim for pension benefits by the named plaintiffs, Robert T. Becher, Roger Hennessey, Kenneth Hutcheson, Daniel McDiarmid, Paul Morea, Robert Pohalski, Joseph Rosato and John Thalman (the "plaintiffs") on behalf of themselves and others similarly situated against the defendants, Long Island Lighting Company ("LILCO"), Retirement Income Plan of Long Island Lighting Company and its predecessor plans (the "LILCO Plan" or the "Plan"), and Robert X. Kelleher, the Plan administrator ("Kelleher") (collectively the "defendants").

The plaintiffs are current and former LILCO employees and Plan participants who at one time withdrew a portion of their contributions from the Plan. As a result of these withdrawals, they were later denied

certain benefits to which they believe they are entitled. Accordingly, they filed this lawsuit claiming that the defendants concealed and misrepresented the consequences of withdrawals of contributions from the LILCO Plan on future benefits. The plaintiffs are now suing under a variety of federal and state statutory and common law theories for damages, declaratory and equitable relief as a result of these allegedly unlawful misrepresentations. Presently before the Court is the plaintiffs' motion for class certification.

*Background*

### 1. *The parties*

The named plaintiffs are all residents of New York and have been employed of LILCO for at least thirty-four years. LILCO is a New York corporation with its principal offices located in Hicksville, New York and is the sponsor of the LILCO Plan. The LILCO Plan is an employee benefit pension plan as defined by the Employment Retirement Income Security Act ("ERISA"). Kelleher is the LILCO Plan administrator as that term is defined by ERISA. During their employment with LILCO, the plaintiffs were participants in the LILCO Plan further described below. At various times from the 1950's to the 1970's, each plaintiff withdrew employee contributions from the Plan in amounts ranging from several hundred to several thousand dollars. As a result of these withdrawals, each of the plaintiffs was later denied benefits by the Plan administrator.

### 2. *The LILCO Plan*

Prior to 1979, the LILCO Plan consisted of two separate plans: the Group Annuity Plan ("GAP") and the Equity Annuity Plan ("EAP"). In 1979, these two plans were merged into a single plan.

Until January 1, 1969, LILCO offered its employees the opportunity to participate in the GAP. Under the GAP, participants were required to contribute a portion of their earnings. These contributions were supplemented by contributions made by LILCO. The combined amount was used to purchase retirement annuities from Metropolitan Life Insurance Company. After January 1, 1969,

LILCO took over the responsibility of making all of the contributions on behalf of its employees. During this time, until the merger of the two plans in 1979, LILCO also made contributions to the EAP on behalf of GAP participants.

The GAP was amended effective January 1, 1972. Rather than use the contributions to buy retirement annuities, as was done in the past, LILCO would now pay retirement benefits directly to retirees based on a formula which was a function in part of years of service. According to the plaintiffs, the defendants have interpreted the 1972 amended Plan to provide that the participants were not entitled to credit for years of service prior to their withdrawals. The plaintiffs assert however, that they were never notified of this interpretation.

In addition, during the period prior to January 1, 1977, LILCO issued several booklets summarizing the terms of the company Plan. Moreover, each year LILCO issued annual benefit statements which summarized the amount of pension benefits each participant would be entitled to at retirement. Yet, despite these pamphlets and statements, LILCO only recently began disclosing that the withdrawal of contributions would result in forfeiture of credit under the Plan for years of service prior to the withdrawals. The plaintiffs contend that the lost benefits have been valued at forty to fifty times the withdrawal amounts and that neither LILCO nor the Plan ever advised the plaintiffs that the withdrawals would have such a dramatic effect on their pension benefits at retirement.

On January 1, 1977 LILCO issued a "new booklet," outlining the Plan's provisions. According to the plaintiffs, this was the first time that the defendants informed the Plan participants that withdrawal of contributions would result in the loss of pension credit for years of service prior to 1969. However, these terms applied prospectively. The only information supplied to the participants which would have informed them that withdrawal of contributions prior to 1977 would result in a forfeiture of credit was the summary plan description distributed in November 1993.

In January 1994, the plaintiffs formally requested that LILCO and the Plan administrator reinstate the forfeited credit based on prior withdrawals. LILCO and the Plan refused reasoning that the plaintiffs had adequate notice that withdrawal of contributions would result in forfeiture of pension credit. This decision was affirmed by the Plan administrator, Robert Kelleher.

*The Complaint*

On May 17, 1995, the plaintiffs filed their Complaint in federal court. Based on the allegations summarized above, the Complaint alleges violations of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1001–1461 (Counts I–V), the Uniformed Services Employment and Reemployment Rights Act of 1994, 38 U.S.C. §§ 4301–4333 ("USERRA") and New York Military Law § 317 (Count VI), and multiple New York state law claims for negligent communication (Count VII), breach of fiduciary duty (Count VIII), fraudulent concealment (Count IX), estoppel (Count X), breach of implied contract (Count XI) and violations of New York Labor Law § 193 (Count XII) and unjust enrichment (Count XIII).

On June 8, 1995, the defendants filed their Answer denying the material allegations contained in the Complaint and asserting five defenses: (1) failure to state a claim for which relief can be granted, (2) ERISA preemption, (3) failure to plead fraud with the required specificity under Fed.R.Civ.P. 9(b), (4) lack of subject matter jurisdiction over some class members, and (5) lack of standing. In addition, the defendants assert five affirmative defenses: (1) statute of limitations, (2) laches, (3) payment, (4) estoppel, and (5) release.

The plaintiffs now move for class certification pursuant to Fed.R.Civ.P. 23. The proposed class consists of all current and former employees who made withdrawals from the Plan, or had withdrawals made for them, prior to January 1, 1977, and as a result, forfeited credit for all years of service prior to the withdrawal.

*Discussion*

Federal Rule of Civil Procedure, governing class certification, specifies that:

[o]ne or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed.R.Civ.P. 23(a). Once these criteria have been satisfied, a class will be certified if it meets one of the following additional conditions provided for in Fed.R.Civ.P. 23(b): (1) separate actions would create a risk of inconsistent adjudications; (2) injunctive or declaratory relief is sought; or (3) common questions predominate over individual questions.

The defendants challenge the plaintiffs' qualifications as a class with regard to every factor listed above. The Court will therefore examine each of the criteria in turn.

However, before beginning the analysis, the Court recognizes that on a motion for class certification, in which it is the plaintiffs' burden to demonstrate compliance with Rule 23's requirements, the Court should accept as true the plaintiffs' allegations concerning the merits of the case. *Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 177–78, 94 S.Ct. 2140, 2152–53, 40 L.Ed.2d 732 (1974); *Adames v. Mitsubishi Bank, Ltd.,* 133 F.R.D. 82, 87–88 (E.D.N.Y.1989). Furthermore, Rule 23 should be given broad rather than restrictive interpretation by the Court. *Adames,* 133 F.R.D. at 88.

The plaintiffs' class is defined as all current and former employees of LILCO who made withdrawals of their employee contributions prior to January 1, 1977, the date the plaintiffs contend they could have first been reasonably expected to know that a withdrawal of contributions would result in a forfeiture of credit under the LILCO Plan.

### A. The requirements of Fed.R.Civ.P. 23(a)

#### 1. Numerosity; Rule 23(a)(1)

Numerosity exists when the joinder of all class member is impracticable. *Robi-*

*doux v. Celani*, 987 F.2d 931, 935 (2d Cir. 1993). However, "[i]mpracticable does not mean impossible." *Id.* Impracticability exists where individual adjudication would take an extended period of time and joinder of all the claims would be expensive, time consuming and drastically increase the legal expenses for all the parties. *In re Drexel Burnham Lambert Group, Inc.*, 960 F.2d 285, 290 (2d Cir.1992).

▮ Factors considered when determining whether a class is too numerous for practical joinder, include the inconvenience of trying individual suits, the geographic dispersion of class members, the financial resources of class members, the ability of claimants to maintain individual suits, and requests for prospective injunctive relief that would involve future class members. *See Robidoux*, 987 F.2d at 935–36. In a recent decision, the Second Circuit recognized that "numerosity is presumed at a level of 40 members." *Consolidated Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir.1995), *citing*, 1 Newberg on Class Actions 2d, (1985 ed.) § 3.05.

The plaintiffs originally claimed that the class includes at least 63 members, all of whom jointly submitted their claims to restore their credits to the Plan administrator under the Plan's claims procedure. In addition, there are "potentially hundreds more individuals who made withdrawals" from the Plan prior to the January 1, 1977 cutoff date.

The defendants concede that there are 67 potential class members because this is the number of Plan participants who have exhausted their administrative remedies under Plan. According to the defendants, since no other participants have exhausted their remedies, the hundreds of potential plaintiffs referenced above lack standing to join the class. *See* Def.Mem. of Law at 10, *citing Kennedy v. Empire Blue Cross & Blue Shield*, 989 F.2d 588, 594 (2d Cir.1993) (recognizing that federal policy favors the exhaustion of remedies requirement under ERISA because any other rule would make the courts, rather than plan trustees, responsible for plan administration in the first instance).

The plaintiffs respond that the defendants exhaustion of remedies argument is an attempt to wrongfully contest the merits of the plaintiffs' claims. *See* Pl.Rep.Br. at 3, *citing, American Pipe & Constr. Co. v. Utah*, 414 U.S. 538, 550–51, 94 S.Ct. 756, 764–65, 38 L.Ed.2d 713 (1974); *Cullen v. Margiotta*, 811 F.2d 698, 719 (2d Cir.1987). Nevertheless, according to the plaintiff's oral argument, if a motion for class certification is the proper vehicle in which to contest the plaintiffs' exhaustion of remedies, only the named plaintiffs need fulfill this threshold requirement. *See* 1 *Newberg*, § 5.15 (addressing the need to exhaust remedies in an employment discrimination class action).

Moreover, the plaintiffs contend that if the exhaustion of remedies argument creates a valid defense, such a defense is prudential not jurisdictional, and therefore does not necessarily defeat the potential plaintiffs' standing. And even if the defense was jurisdictional, *see Barnett v. IBM Corp.*, 885 F.Supp. 581, 586–87 (S.D.N.Y.1995), *citing, Ludwig v. NYNEX*, 838 F.Supp. 769, 781 (S.D.N.Y. 1993) ("Th[e] exhaustion [of remedies] requirement is a jurisdictional prerequisite to a suit for benefits"), it would only apply to one of the causes of action, Count V, seeking to recover benefits under ERISA § 502(a)(1)(B).

Fortunately, the Court need not concern itself with the intricacies of the exhaustion of remedies defense at this time. As stated above, the Second Circuit recently recognized in *Consolidated Rail Corp., supra,* that numerosity "is presumed at a level of 40 members." The defendants concede that there are 67 potential plaintiffs. The plaintiffs asserted in their papers that there were at least 63 class members who had exhausted their administrative remedies. At oral argument they increased the estimate to 98. Both of these numbers satisfy the test for presuming of numerosity. Accordingly, the Court finds that the plaintiffs have satisfied the requirement under Fed.R.Civ.P. 23(a)(1).

This conclusion should not be considered a ruling on the merits of the exhaustion issue. The Court's decision today should not be read as necessarily precluding a future attempt to limit the scope of the class, or barring any related motion.

### 2. Common questions of law or fact; Rule 23(a)(2)

The second requirement for class certification is that the plaintiffs show that their claims share common questions of law or fact. *See* Fed.R.Civ.P. 23(a)(2); *Drexel Burnham*, 960 F.2d at 290–91. "Rule 23(a)(2) requires only that questions of law or fact be shared by the prospective class. It does not require that *all* questions of law or fact raised be common." *Halford v. Goodyear Tire & Rubber Co.*, 161 F.R.D. 13, 18 (W.D.N.Y.1995), *citing, Dura–Bilt Corp. v. Chase Manhattan Corp.*, 89 F.R.D. 87, 93 (S.D.N.Y.1981) (emphasis in original); 1 Newberg on Class Actions at § 3.10 (3d ed. 1992). The standard for meeting the Rule 23(a)(2) prerequisite is qualitative rather than quantitative—that is, there need only be a single issue common to all members of the class. *See Port Authority Police Benevolent Ass'n v. Port Authority of N.Y. & N.J.*, 698 F.2d 150, 153–54 (2d Cir.1983) (common question of free speech overrode individual questions concerning each class member); *Newberg*, at § 3.10. The critical inquiry is whether the common questions lay at the "core" of the cause of action alleged. *See Halford*, 161 F.R.D. at 18.

In cases where the plaintiffs have relied on alleged misrepresentations made in the defendants' mailing as the basis of the lawsuit, courts have found common questions of law or fact sufficient to certify the class. *Westman v. Textron, Inc.*, 151 F.R.D. 229, 231 (D.Conn.1993) (certifying the class in an action for breach of fiduciary duty under ERISA); *see also Devine v. Combustion Engineering, Inc.*, 760 F.Supp. 989, 994–95 (D.Conn.1991) (Cabranes J.) (certifying the class of plan participants who received at least one identical document on which the plaintiffs allegedly relied in making retirement decisions).

The plaintiffs contend that this action contains common questions of law and fact sufficient to warrant class certification. According to the plaintiffs in their first two causes of action, pursuant to ERISA § 502(a)(2) and (a)(3), the defendants' are liable for pension benefits as a result of their "misrepresentation and concealment of certain material terms of the Plan—as the defendants have interpreted it—in the Plan's various summary plan descriptions issued in 1977, 1980, 1985 and 1990." Pl.Mem. of Law at 9. These alleged misrepresentations and concealments, made to all class members, support claims for equitable relief under ERISA § 502(a)(3) and breach of fiduciary duty under ERISA § 502(a)(2).

In their third cause of action, the plaintiffs assert a breach of fiduciary duty claim pursuant to ERISA §§ 409 and 502(a)(2) and (a)(3) based on the same alleged misrepresentations and concealments discussed above. In further support of this common law claim, the plaintiffs allege that "the Plan administrator failed to collect sufficient contributions from LILCO and allowed LILCO excessive offsets and excessively increased benefits for non-class members to the detriment of the Plan as a whole." Pl.Mem. of Law at 10.

In count four, the plaintiffs allege that the Plan's administrator violated ERISA § 502(c), 29 U.S.C. § 1132(c) by failing to provide plaintiffs' counsel with copies of Plan documents pertinent to his denial of their claims. According to the plaintiffs, this failure to provide documents hindered the plaintiffs' ability to make their claims to the Plan administrator.

Count five is a claim for benefits under ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B). The plaintiffs contend that this claim for benefits "clearly involve[s] common questions of law and fact," as the Plan administrator denied "all [of the presently existing plaintiffs'] claims in a single opinion, relying on legal and factual grounds that were generally common to the class." Pl.Mem. of Law at 11.

Pursuant to Count six, the plaintiff Roger Hennessey claims, on behalf of a subclass, that the defendants violated the Uniform Employment and Reemployment Rights Act of 1994, 38 U.S.C. § 4323 and New York Military Law § 317. The subclass consists of Plan participants who took military leaves of absence from their employment with LILCO. As a result of the leave, the defendants withdrew the subclass members' contributions to the Plan without their having

made an election to make the withdrawals. Because of the withdrawals, the members of the subclass never received credits for their years of employment prior to the leave.

Finally, the plaintiffs argue that their state law claims, counts seven through thirteen, are premised on the "defendants' misrepresentation and concealment of facts through Plan booklets prior to ERISA's enactment." Pl.Mem. of Law. at 12. These causes of action raise common questions of law and fact because the defendants rely on the Plan booklets as a defense to the class members' claims arguing that the participants knew the consequences of their withdrawals.

The defendants respond that misrepresentations underlying the state law claims are "based largely on pre-ERISA allegedly false and misleading *oral* statements—made more than 20 years ago, at different times, between different claimants and different individuals representing management." Def. Mem. of Law at 14. The defendants only reference to the ERISA claims is contained in a footnote which asserts that there are no common questions of law or fact with respect to those claims because some of the class members will not have exhausted their administrative remedies, a defense to this motion that this Court has already rejected.

The Court finds that there are common questions of law and fact sufficient to satisfy the standard contained in Rule 23(a)(2). The essence of the plaintiffs allegations is that between the 1950's and the 1970's, the defendants promulgated multiple written documents describing benefits provided under the LILCO Plan which were provided to all participants. According to the plaintiffs, none of these documents explained that if a Plan participant withdrew any contributions that he would forfeit his credit for employment benefits prior to the withdrawal. These withdrawals of benefits, often between a few hundred and a few thousand dollars, effectively deprived the beneficiaries of hundreds of thousands of dollars in retirement benefits.

The fact that during the period in question, many different LILCO employees may have made various representations to the plaintiffs is not dispositive on this issue. As stated above, the plaintiffs all received documents describing their retirement benefits. They claim that these documents never explained that contribution withdrawals would have a seriously detrimental impact on their future benefits. The "concealment" of this information allegedly violates ERISA and state statutory and common law. These allegations are common to all plaintiffs and are sufficient to support class certification. *See Westman,* 151 F.R.D. at 231 (where the defendant mailed each plaintiff three separate letters which each recipient allegedly relied on when deciding whether and when to retire, there were common questions of law and fact sufficient to certify the class); *Devine,* 760 F.Supp. at 995 (where a single "promise" or a single document describing the retirement benefits under a plan served as a basis for the ERISA claim there would be common questions of fact and law sufficient to certify the class).

### 3. *Typicality; Rule 23(a)(3)*

Rule 23(a)(3), requiring that the named plaintiffs' claims be typical of the class, is satisfied "when each class member's claim arises from the same course of events and each class member makes similar legal arguments to prove the defendant's liability." *Robidoux,* 987 F.2d at 936, *citing Drexel Burnham,* 960 F.2d at 291. When the same unlawful conduct was directed at both the named plaintiff and the class he seeks to represent, the typicality requirement is usually met "irrespective of minor variations in the fact patterns underlying individual claims." *Id., citing,* 1 Newberg at § 3.13, at 167 (2d ed. 1985).

The plaintiffs' claims satisfy Rule 23(a)'s typicality requirement. All of the prospective class members allegedly lost retirement benefits as the result of their withdrawing Plan contributions before January 1, 1977. They uniformly allege that information regarding the effect of such withdrawals on future benefits was concealed from them in violation of ERISA and state common law. The unlawful conduct alleged was directed at the named plaintiffs and class members alike, irrespective of minor variations, and as such are sufficient to justify certification.

#### 4. *Adequacy of representation; Rule 23(a)(4)*

Under Rule 23(a)(4), adequacy of representation is measured by two standards. First, class counsel must be qualified, experienced and generally able to conduct the litigation. *Halford,* 161 F.R.D. at 19. Second, the class members must not have interests that are "antagonistic" to one another. *Id.* at 19, *citing, Drexel Burnham,* 960 F.2d at 291.

While the defendants do not challenge class certification under the first prong of this test, they do challenge certification under the second. According to the defendants, the eight named employees include management, union and non-union employees as well as active and retired employees. The defendants contend that the management, union and non-union employees' interests are antagonistic because of the conflicting interests inherent in the collective bargaining relationship. In addition, the defendants assert that the interests of the active and retired employees are antagonistic because a judgment favorable to the plaintiffs in this case would result in increased costs for LILCO and could result in lower wages for active employees.

The Court rejects both of these contentions. While active and retired employees may have some divergent interests, in a lawsuit addressing benefit plans this disparity is insufficient to defeat class certification under Rule 23(a)(4). *See Gruby v. Brady,* 838 F.Supp. 820, 826–27 (S.D.N.Y.1993) (holding "that certification of plaintiffs' [ERISA] claims is not defeated by the presence of both retired and active Members in the proposed class"), *citing, Probe v. State Teachers' Retirement Sys.,* 780 F.2d 776, 781 (9th Cir.), *cert. denied,* 476 U.S. 1170, 106 S.Ct. 2891, 90 L.Ed.2d 978 (1986) (upholding class certification and finding that no conflict exists between retired teachers seeking increased benefits and currently employed teachers who will theoretically have to pay such benefits); *Church v. Consolidated Freightways, Inc.,* No. C–90–2290, 1991 WL 284083 at *5–*6, 1991 U.S.Dist. LEXIS 15419, at *15 (N.D.Cal. June 14, 1991) (the presence of former and current employees in the proposed class does not create a conflict for purposes of a class action). All participants seek the same "make-whole" relief claimed by the named plaintiffs for misrepresentation and breach of fiduciary duties. *Id.* Accordingly, like the court in *Gruby,* this Court finds the distinction between active and retired employees insufficient to bar certification.

The defendants' second reason for denying class certification under Rule 23(a)(4) is that the relationship between the management, union and non-union employee plaintiffs is antagonistic. Although *Gruby* does not address this potential conflict directly, its reasoning is relevant to this case. In *Gruby,* the plaintiffs, suing an ERISA fund's trustees sought class certification. In opposing certification, the defendants argued that the interests of the named class members were antagonistic. In rejecting the defendants' contentions the district court recognized that "class certification should not be denied [because of] speculative suggestion of potential conflicts." *Gruby,* 838 F.Supp. at 827, *citing, Breedlove v. Tele–Trip Co.,* No. 91 C 5702, 1993 WL 284327 at 7 (N.D.Ill. July 26, 1993). As the district court recognized in a related footnote:

> Even if a conflict was found to exist, the Court need not necessarily deny class certification.
>
> A Court may certify a class where the unnamed class plaintiffs, whose interests are antagonistic to other members of the class, are adequately represented by defendants in a class action.... In addition, the court may create subclasses or exclude a sub-group from the class definition.... [Moreover], the court can certify the class conditionally to provide time for disagreement among class members to become clear, or the court can decertify a class if it becomes apparent that the representation is inadequate.

*Id.* at 827 n. 8, *citing, Breedlove,* 1993 WL 284327 at *7–*8.

Applying this reasoning, the Court finds that it would be premature to deny class certification at this time based on alleged conflict of interests between the union, non-union and management employees. While

the Court is mindful of the adversarial relationship between labor and management which serves as the basis for collective bargaining, and the potential conflict between union and nonunion employees, the Court is not prepared to find that these conflicting interests are sufficient to preclude certification.

As the plaintiffs contend, under the relevant terms of the collective bargaining agreements the same ERISA Plan applies to management, non union and union employees alike. So while the case law acknowledges the conflicting interests between union, non union and management employees, applying this distinction to deny certification here would be promoting form over function. Accordingly, the Court finds that the named plaintiffs are not sufficiently antagonistic to defeat class certification under Rule 23(a)(4).

Parenthetically, the Court notes that defendants, in a footnote, contend that named plaintiff Roger Hennessey, who also represents a sub-class of employees who lost benefits as the result of withdrawals made because of military leave, is an inadequate representative because he prevailed on his administrative appeal. Def.Mem. of Law at 2 n. 1. However, Hennessey contests the sufficiency of his remedy. Accordingly, the Court finds that his claim is not moot, and that he does serve as an adequate class and subclass representative.

### B. *The requirements of Rule 23(b)*

As discussed above, once the requirements of Rule 23(a) are satisfied, the plaintiffs must then satisfy one of the following additional conditions provided for in Fed.R.Civ.P. 23(b): (1) separate actions would create a risk of inconsistent adjudications; (2) injunctive or declaratory relief is sought; or (3) common questions of law or fact predominate over individual questions.

### 1. *The risk of inconsistent verdicts*

The plaintiffs assert that denial of class certification would result in the risk of inconsistent verdicts. Specifically, the plaintiffs contend that "the defendants' conduct was either lawful or unlawful as to all members of the class." *See Westman,* 151 F.R.D.

at 231 (finding that a breach of fiduciary duty is common to all class members and that denial of certification could result in inconsistent verdicts). The Court agrees.

Failure to certify the class could result in multiple suits regarding the trustees' interpretation of the LILCO Plan. Each case could conceivably result in different courts reaching conflicting decisions regarding not only the Plan's interpretation but also the applicability of the various defenses the defendants seek to interpose. Accordingly, the Court finds that the plaintiffs have satisfied the requirements of Fed.R.Civ.P. 23(b)(1).

### 2. *Final injunctive relief*

Fed.R.Civ.P. 23(b)(2) provides that class certification is appropriate where the class seeks injunctive relief. The plaintiffs assert that they have satisfied Rule 23(b)(2) as they now seek injunctive relief compelling the defendants to credit the class members for years of service prior to their withdrawals of employee contributions and to award all such credits in the future.

Again, the Court agrees. The resolution of the requests for equitable relief are appropriate for resolution by class action. The plaintiffs seek credit for their pre-withdrawal service to LILCO. This request is common to all class members and is based on the same underlying facts, namely the alleged misrepresentations and concealments and breach of fiduciary duty. Accordingly, the Court finds that the plaintiffs have satisfied the requirements of Rule 23(b)(2).

The defendants contend that certification is not warranted under Rule 23(b)(2) relying on *Ches v. Archer,* 1989 WL 132035 (S.D.N.Y. Oct. 25, 1989). However, *Ches* is inapposite. In *Ches,* the Court was considering related claims brought by both the trustee and individual beneficiaries. The district court held that class certification was inappropriate under Fed.R.Civ.P. 23(b)(2) because "injunctive relief favoring the trustee [would] also favor the Plan's participants." *Id.* at *2. Therefore, certifying a class would be "largely a formality." *Id.* In this case however, there is no concurrent suit by the trustee. Accord-

ingly, the court's reasoning in *Ches* does not apply here.

### 3. *Common questions of law or fact predominate*

Rule 23(b)(3) provides that a class should be certified where "the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." The plaintiffs contend, that based on the common questions of law and fact addressed above, they are entitled to certification. The defendants do not address this argument in their response papers.

The Court finds this issue difficult to resolve at this point in the litigation. According to the plaintiffs, the common questions of law and fact revolve around their allegations that the defendants misrepresented the provisions of the LILCO Plan in their descriptive documents because they never explained that a withdrawal of contributions would result in a loss of credit for all prior years of service. The defendants contend that each of the plaintiffs is suing based on oral misrepresentations made by different LILCO employees regarding retirement benefits. While the Court finds that these issues present common questions of law and fact sufficient to satisfy Fed.R.Civ.P. 23(a)(2), the Court cannot determine at this time whether these common issues predominate under Rule 23(b)(3). However, the Court need not resolve this issue at this time as the plaintiffs have already satisfied the requirements of Rule 23(b)(1) and (b)(2).

*Conclusion*

After reviewing the papers submitted by all the parties, and hearing oral argument, and for the reasons set forth above, it is hereby

ORDERED that the plaintiffs motion for class certification pursuant to Fed.R.Civ.P. 23 is granted in all respects.

SO ORDERED.