Ann E. BUBLITZ, Dorothy A. Pierce, and Robert D. York, Individually and on Behalf of Themselves and All Persons Similarly Situated, Plaintiffs,

v.

E.I. DU PONT DE NEMOURS AND COMPANY and Pioneer Hi–Bred International, Inc., Defendants.

Jeanne Foster, Plaintiff,

v.

E.I. du Pont de Nemours and Company and Pioneer Hi–Bred International, Inc., Defendants.

William Pennington, Plaintiff,

v.

E.I. du Pont de Nemours and Company and Pioneer Hi–Bred International, Inc., Defendants.

No. 4–00–CV–90247, 4–00–CV–90286, 4–00–CV–90375.

United States District Court,
S.D. Iowa,
Central Division.

July 25, 2001.

Gerald J. Newbrough, Michael W. Thrall, Frank B. Harty, Nyemaster, Goode, Voigts, West, Hansell & O'Brien, P.C., Des Moines, IA, Daniel M. Reilly, Larry S. Pozner, Julie M. Williamson, Hoffman, Reilly, Pozner & Williamson, LLP, Denver, CO, for Ann Bublitz, Dorothy Pierce, and Robert D. York.

Brent B. Green, Mariclare Thinnes–Culver, Duncan, Green, Brown & Langeness, Des Moines, IA, foro Julie P. Westendorf.

Michael A. Giudicessi, William J. Hunnicutt, Faegre & Benson, Des Moines, IA, John B. Gordon, Steven L. Severson, Paul W. Heiring, Ahna M. Thoresen, Faegre & Benson, Minneapolis, MN, for Defendants.

## MEMORANDUM OPINION AND ORDER

PRATT, District Judge.

This matter is before the Court on Plaintiffs' Motion for Class Certification in the lead case. For the reasons that follow, the Court grants Plaintiffs' motion in part and denies it in part.

### I. BACKGROUND

Originally, the Plaintiffs in this case were Ann Bublitz ("Bublitz") and Dorothy Pierce ("Pierce"). They sought to represent themselves, as well as all those similarly situated with respect to the benefit plan at issue, against the Defendants, Pioneer Hi–Bred International, Inc. ("Pioneer") and E.I. duPont de Nemours and Company ("DuPont"). In their Complaint, filed April 21, 2000, Plaintiffs alleged four counts under the Employee

Retirement Security Act ("ERISA"), 29 U.S.C. § 1001 *et seq.:* Count I was a claim for enforcement and declaration of plan benefits against Pioneer and DuPont; Count II was a breach of fiduciary duty claim against Pioneer and DuPont; Count III was a claim against DuPont for interference with protected rights; and Count IV was an equitable relief claim against Pioneer and DuPont asking the Court to toll the three-year period during which participants are entitled to exercise their rights under the plan for the pendency of this action.

The benefit plan at issue in this case is called the Change in Control Severance Compensation Plan for Management Employees ("Change in Control Plan"). This plan was created by Pioneer at least in part to protect itself from the adverse effects of attempted takeovers. To that end, the plan provides generous severance benefits in the event of a takeover in order to encourage people to work in an environment where takeover threats were real.

More than just a takeover, or "Change in Control," is necessary to entitle an employee to benefits under the plan though. The employee must be subject to an involuntary termination, which the plan defines as a termination other than a termination for cause or the participant's resignation or retirement for a "Stated Good Reason." Under Section 2.1(t) of the plan, a "Stated Good Reason" is "a written determination by a participant that he [or she] reasonably and in good faith cannot continue to fulfill the responsibilities for which he [or she] was employed." Plaintiffs refer to this as a "subjective" trigger. The plan also identifies a number of specific actions by Pioneer that give rise to a conclusive presumption that the participant's determination is reasonable and in good faith, which Plaintiffs refer to as "objective" triggers. These objective triggers include the following: (a) a reduction in the participant's base salary; (b) a failure to continue in effect any bonus plan; (c) a failure to continue any benefit or compensation plan; (d) an assignment to the participant of any duties inconsistent with the participant's duties, responsibilities, or status immediately prior to the Change in Control, or changes in the participant's reporting responsibilities, title, or office; and (e) a requirement that the participant change the location of his or her job or office, so that the participant will be based more than 30 miles away from where he or she was based.[1]

Claims for severance benefits must be made in writing to the "Severance Committee" within three years of the Change in Control. An eligible participant is then entitled to receive a lump-sum cash payment equal to three times his or her compensation, plus health, dental, and life insurance coverage for twelve months. In October of 1999, DuPont purchased the remaining 80% of Pioneer that it did not already own and effected a Change in Control within the meaning of the plan.

Plaintiffs filed their Motion for Class Certification on August 8, 2000. Defendants requested additional time to conduct discovery on the named Plaintiffs, Bublitz and Pierce. Defendants finally filed their resistance brief on December 22. Plaintiffs filed their reply brief on February 1, 2001. In their reply brief, Plaintiffs stated that Bublitz had resigned and would no longer seek to serve as a class representative. Then, in a letter dated March 14, Defendants notified the Court that Pierce had also resigned. Plaintiffs then amended their Complaint to add Robert York ("York") as a named Plaintiff. Defendants then requested time to conduct discovery on York.

In the meantime, Defendants had filed separate motions to dismiss and submitted a "Retention Proposal" to the proposed class members. As indicated by its name, the Retention Proposal was designed to provide participants with an incentive to remain at Pioneer. It offered each participant a stock option grant valued at three times the employee's total compensation as of October 1, 1999. The options would then become vested on October 1, 2002, if the employee was still employed by Pioneer. In exchange for these

---

1. In their brief in support of their motion for class certification, Plaintiffs state that any claims involving objective triggers (d) and (e) are not a part of this action. Pls.' Mem. Br. in Supp. of Mot. for Class Certification at 5 n. 4.

stock options, participants had to waive their rights under the Change in Control Plan, accept a new Transitional Severance Plan (which provided benefits in certain circumstances when an employee suffers an involuntary termination before his or her stock options vest wherein the definition of "involuntary termination" is narrower than that in the Change in Control Plan), and agree not to participate in litigation regarding the Change in Control Plan. Although there was some dispute regarding the manner in which Defendants could communicate such an offer, the Court eventually allowed Defendants to present the Retention Proposal directly to the proposed class members, but only in writing. Defendants presented the Retention Proposal to the putative class members on September 29, 2000 and gave them until October 18, 2000 to accept it.

In their motions to dismiss, Pioneer and Dupont argued that the claims against them were not ripe. Dupont further argued that even if the claims are ripe, it is not a proper party. With no conclusion to the class certification issue in sight, the Court went ahead and ruled on Defendants' motions on March 26, 2001. The Court held that Dupont was not a proper party to Counts I, III, and IV, but that it was a proper party to Count II. As to Counts I, II, and IV against both Defendants, the Court held the claims of those who signed the Retention Proposal and those who received benefits were not ripe, but that the claims of those who refused to sign the Retention Proposal or who were denied benefits were ripe.

Finally, on May 14, 2001, the Court issued an Order requesting that the parties inform the Court what else was needed before the Court ruled on Plaintiffs' Motion for Class Certification and approximately how long it would take to accomplish it. In response, Defendants filed a supplemental brief. Plaintiffs, in response, requested additional time to provide the Court with information and argument regarding the impact of the "Shaw Pittman Opinion" and the "Blue Book," which Magistrate Judge Shields had just recently ruled was discoverable. The Court granted Plaintiffs' request and the Plaintiffs filed their supplemental brief on

June 18. Defendants, in turn, filed a response brief. The matter is now fully submitted.

## II. DISCUSSION

Plaintiffs present two separate issues. First, Plaintiffs request that the Court reconsider its ruling on the claims of the Retention Proposal signers in light of recently discovered evidence. Second, Plaintiffs argue that the Court should certify the class as originally proposed regardless of whether some of the class members signed the Retention Proposal. The Court agrees that the Retention Proposal signers should be reinstated to the claims, but it does not agree that they should be included in the class.

### A. Reconsideration of the Court's Ruling on the Claims of the Retention Proposal Signers

Plaintiffs request that the Court reconsider its dismissal of the Retention Proposal signers' claims. According to Federal Rule of Civil Procedure 54(b), in the absence of an express determination that there is no just reason for delay and an express direction for entry of judgment, "any order or other form of decision, however designated, which adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties shall not terminate the action as to any of the claims or parties, and the order or other form of decision is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties." *See also United States v. Arkansas*, 791 F.2d 1573, 1576 (8th Cir.1986) (holding that the district court's reinstatement of a party was proper under Rule 54(b) because the dismissal of that defendant was not certified and the reinstatement was done prior to a final judgment adjudicating the rights and liabilities of all the parties involved). This is as opposed to Rule 59(e), which governs motions to reconsider after a final judgment and under which motions must be made within ten days. *See Pivot Point Int'l, Inc. v. Charlene Prods., Inc.*, 816 F.Supp. 1286, 1287–88 (N.D.Ill. 1993). The ruling that Plaintiffs ask this Court to reconsider did not adjudicate all the

rights and liabilities of all the parties involved, nor did it certify the judgment as final. Therefore, the Court may revise it at this time.

Plaintiffs' reconsideration request is based on evidence discovered after the Court's ruling. Plaintiffs now claim that the Shaw Pittman Opinion and the "DeMeulenaere History" (which is contained in the Blue Book), and Defendants' withholding of those documents, provide a basis for challenging the validity of the Retention Proposal waivers. Based on this evidence, the Court holds that the claims of the Retention Proposal signers are ripe. In its prior ruling, the Court held that the Retention Proposal signers's claims were not ripe because they had waived their rights to the Change in Control Plan and were not challenging the validity of those waivers. With the validity of the waivers challenged, the Retention Proposal signers' contention that they have a right to a quit-first determination of their rights under the Change in Control Plan is sufficient under a Rule 12(b)(6) standard, as it was for those who did not sign the Retention Proposal. And thus the Retention Proposal signers can be reinstated to Counts I, II, and IV.

## B. Rule 23(a) Requirements

Federal Rule of Civil Procedure 23(a) requires the following prerequisites to bringing a class action:

> (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Plaintiffs propose a class defined as all Pioneer Pay Band III and Pay Band IV employees who were, as of April 21, 2000, "Employees" as defined in Section 2.1(i) of the Change in Control Plan, excluding only those class members who have received full Change in Control Plan benefits (including attorney fees and costs). The Court finds that a class defined as such does not satisfy the Rule 23(a) prerequisites, but that a class

which also excludes the Retention Proposal signers does.

### 1. Numerosity

■ "The numerosity requirement requires examination of the specific facts of each case and imposes no absolute limitations." *General Tel. Co. of Northwest, Inc. v. EEOC*, 446 U.S. 318, 330, 100 S.Ct. 1698, 64 L.Ed.2d 319 (1980). "In addition to the size of the class, the court may also consider the nature of the action, the size of the individual claims, the inconvenience of trying individual suits, and any other factor relevant to the practicability of joining all the putative class members." *Paxton v. Union Nat'l Bank*, 688 F.2d 552, 559–60 (8th Cir.1982). Defendants argue that any class excluding the Retention Proposal signers fails the numerosity requirement because of the small number, because the members are geographically concentrated and Plaintiffs know their identities, and because of the financial resources and sophistication of the members. The Court, however, agrees with the Plaintiffs. Plaintiffs contend that the relatively small number of those who refused to sign the Retention Proposal satisfies the numerosity requirement because courts have allowed smaller numbers in employee class actions, because of the natural fear of suing one's employer, and because courts have relaxed the numerosity requirement parties seek to certification pursuant to Rule 23(b)(2).

Courts have certified employee class actions with relatively small numbers. In *Paxton v. Union National Bank*, the Eighth Circuit cited with approval cases certifying classes of sixteen and eighteen members. 688 F.2d at 561 (citing *Cypress v. Newport News Gen. & Nonsectarian Hosp. Ass'n*, 375 F.2d 648, 653 (4th Cir.1967) (eighteen class members); *Crenshaw v. Maloney*, 13 FEP Cases 154, 155, 1976 WL 13311 (D.Conn. 1976) (sixteen class members)). In *Arkansas Educ. Ass'n v. Board of Educ.*, 446 F.2d 763, 765 (8th Cir.1971), the Eighth Circuit held that a class of twenty was sufficient to satisfy the numerosity requirement. One of the circumstances the court found significant, was that subsequent to the filing of the action, the school district had adopted a nondiscriminatory salary schedule thereby reducing the

256

potential members of the class and lessening the chance of individual actions. *Id.* at 765–66. Further, in *Bradford v. AGCO Corp.,* 187 F.R.D. 600, 604 (W.D.Mo.1999), the court noted the following: "The fact that the plaintiffs are all located in the same state does not defeat certification. Having all the plaintiffs in close proximity makes the possibility of separate trials even more distasteful."

Courts have also recognized the natural fear that comes with suing one's employer. In *Arkansas Educ. Ass'n,* the Eighth Circuit recognized that "those teachers who remain in the school system could have a natural fear or reluctance to bring this action on an individual basis." 446 F.2d at 765. Similarly, in *Horn v. Associated Wholesale Grocers, Inc.,* 555 F.2d 270, 275 (10th Cir.1977), the court, stating that the district court stressed the requirement of a large number too much, found:

> There can be judicial notice that employees are apprehensive concerning loss of jobs and the welfare of their families. They are frequently unwilling to pioneer an undertaking of this kind since they are unsure as to whether the court will support them. Even if they do prevail, they are apprehensive about offending the employer as a result of taking a stand. These are all factors that enter into the impracticability issue.

And in *Allen v. Isaac,* 99 F.R.D. 45, 53 (N.D.Ill.1983), the court also recognized that "[c]omplicating an employee's ability to pursue his own claim, is the fear that his job will be jeopardized by bringing his employer to court."

Finally, courts have relaxed the numerosity requirement when the plaintiffs seek certification pursuant to Rule 23(b)(2). In *Horn,* 555 F.2d at 275, the court found that "a permissive attitude is reflected by an apparent liberalized application of the Rule 23(a) prerequisites in Rule 23(b)(2) cases." In *Grant v. Sullivan,* 131 F.R.D. 436, 446 (M.D.Pa.1990), the court also noted that the numerosity requirement is relaxed where the class seeks injunctive and declaratory relief.

The Court finds that a class excluding the Retention Proposal signers satisfies the numerosity requirement. Defendants claim that there are only sixteen individuals who declined to sign the Retention Proposal and remain employed by Pioneer, and that there is only one individual, York, who resigned from Pioneer after April 21, 2000. That would make seventeen individuals, excluding the Retention Proposal signers, in Plaintiffs' proposed class. Because almost all of those members remain employed by Pioneer, they could suffer the fear recognized in suing one's employer. It is also of significant note that Defendants submitted the Retention Proposal after the filing of this action and are counterclaiming against two individuals who brought individual suits under the same plan for attorneys' fees. Lastly, it is important that Plaintiffs' are primarily seeking injunctive and declaratory relief. Under all these circumstance, a class of seventeen is sufficient. Plaintiffs' original proposed class of approximately two hundred and fifty would likewise satisfy the numerosity requirement.

## 2. Commonality

■ The commonality requirement demands that there be common questions of law or fact among the members of the class. Fed.R.Civ.P. 23(a)(2). However, Rule 23(a)(2) "does not require that every question of law or fact be common to every member of the class, and may be satisfied, for example, 'where the question of law linking the class members is substantially related to the resolution of the litigation even though the individuals are not identically situated.'" *Paxton,* 688 F.2d at 561 (quoting *American Finance Sys., Inc. v. Harlow,* 65 F.R.D. 94, 107 (D.Md.1974)) (internal citations omitted). And " '[w]here the party opposing the class has engaged in some course of conduct that affects a group of persons and gives rise to a cause of action, one or more of the elements of that cause of action will be common to all of the persons affected.'" *Fuller v. Fruehauf Trailer Corp.,* 168 F.R.D. 588, 595 (E.D.Mich.1996) (quoting *Rodriguez v. Berrybrook Farms, Inc.,* 672 F.Supp. 1009, 1015 (W.D.Mich.1987)).

The commonality requirement is easily satisfied in this case. Common questions of law and fact include: whether changes in bonus plans and compensation and benefit plans

imposed by the Defendants after the merger entitle participants to benefits under the Change in Control Plan; whether a participant's subjective determination that he or she reasonably and in good faith cannot continue to fulfill the responsibilities for which he or she was employed qualifies as a "Stated Good Reason" under the Change in Control Plan; and whether the Defendants breached their fiduciary duties to the plan participants. The requirement is satisfied by these questions whether the Retention Proposal signers are included or not.

### 3. Typicality

■ The purpose of the typicality requirement is "to limit the class claims to those fairly encompassed by the named plaintiff's claims." *General Tel. Co. of Northwest, Inc.,* 446 U.S. at 330, 100 S.Ct. 1698. Defendants argue that York and Pierce's claims are not typical of any of the proposed class members' claims. Defendants also argue that York's claims are especially non-typical of the Retention Proposal signers' claims.

York's claims are at least typical of the claims of those individuals who did not sign the Retention Proposal. "The proper inquiry is whether other members of the class have the same or similar injury, whether the action is based on conduct not special or unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Dura–Bilt Corp. v. Chase Manhattan Corp.,* 89 F.R.D. 87, 99 (S.D.N.Y.1981). Defendants argue that York's claims are not typical of the class members' claims because he will only benefit from money damages. However, York is claiming the same declaratory and injunctive relief as the proposed class members and contends that such relief is directly applicable to him.

Pierce's claims are also typical of claims of those who did not sign the Retention Proposal. Pierce has resigned and submitted a claim for benefits, but she has not yet had her claim granted or denied. Until her claim for benefits is granted, her position is substantially similar to those who remain employed by Pioneer and refused to sign the Retention Proposal.

Similarly, York and Pierce's claims are typical of those individuals, like Bublitz, who received benefits under the Change in Control but still claim attorneys' fees and expenses. Their claims encompass the claims of those individuals. Like those individuals, York and Pierce are also seeking attorneys' fees and costs for the efforts they are putting forth to obtain benefits.

Neither York nor Pierce's claims, however, are typical of the claims of those individuals who did sign the Retention Proposal. Courts have been very reluctant to let class members who have executed waivers or releases to be represented by someone who has not executed the same. In *Melong v. Micronesian Claims Comm'n,* 643 F.2d 10, 18 (D.C.Cir.1980), the court held:

> This issue is not a novel one; it has been addressed often by courts in a variety of cases involving proposed class actions. In each instance, the court considering the question has concluded that proposed class members who have executed releases can not be represented by individuals who have not executed a release. We agree with this principle and, in the instant cases, hold that those claimants who have previously executed releases may not be included within appellants' proposed classes.

*See also Thonen v. McNeil–Akron, Inc.,* 661 F.Supp. 1271, 1274 (N.D.Ohio 1986) (holding named plaintiffs could not satisfy typicality requirement because unlike the class members they did not sign an accord and satisfaction agreement); *Shirley Swoope v. BellSouth Telecommunications, Inc.,* Nos. CIV.A. 1:97CV181–D–D, CIV.A. 1:97CV359–D–D, 1998 WL 433952, *2–4, (N.D.Miss. June 23, 1998) (following *Melong,* 643 F.2d at 18).

The challenge to the validity of the Retention Proposal waivers would likely dominate the proceedings. *See Hall v. Burger King Corp.,* Civ. A. No. 89–0260–CIV–KEHOE, 1992 WL 372354, at *8 (S.D.Fla. Oct.26, 1992) (holding the existence of releases further precluded typicality because each plaintiff would necessarily need to address the unique questions pertaining to the validity of those releases); *Ciarlante v. Brown & Williamson*

*Tobacco Corp.*, Civ. A. No. 95–4646, 1995 WL 764579, at *2 (E.D.Pa. Dec.18, 1995) (stating the validity of the waivers would assume major importance and the non-signers should not be delayed or impeded by injecting the release issues into the litigation). Plaintiffs argue that much of the evidence challenging the validity of the waivers is uniform and that the validity of the waivers should be determined at the end of the proceedings. However, the Court does not agree that the waivers should be taken up at the end of the proceedings. And although much of the evidence may be uniform, unique questions would likely arise. The seventeen or so plaintiffs who did not sign the Retention Proposal should not have their claims impeded by questions as to the validity of the two hundred and twenty waivers that were signed. Therefore, because York and Pierce did not sign the Retention Proposal they may not represent those who did.

### 4. Adequacy of Representation

■ The adequacy of representation requirement presents a twofold inquiry: (1) whether "the class representatives have common interests with the members of the class, and (2) whether the class representatives will vigorously prosecute the interests of the class through qualified counsel." *Paxton*, 688 F.2d at 562–63. No dispute exists as to whether Plaintiffs' counsel will be able to adequately represent the parties. Indeed, Plaintiffs would be hard pressed to find better counsel to prosecute their claims. Rather, the dispute here is whether York's interests are adequately aligned with those of the class and whether they can be trusted to vigorously represent the class.

Defendants argue that York has no interest in whether class members are entitled to a pre-quit determination of their rights in Count I and in whether the statute of limitations is tolled in Count IV. As Plaintiffs point out though, there are five other declarations they are seeking in Count I and the denial of a pre-quit determination is also part of the Count II breach of fiduciary claim. And because of the nature of Count IV, it is itself practically part and parcel of Count I. The Court therefore finds that the class will be adequately represented on those claims. For the same reasons, the Court rejects Defendants's arguments that York and Pierce cannot be an adequate representatives because of the individual nature of their claims. *See Becher v. Long Island Lighting Co.*, 164 F.R.D. 144, 152 (E.D.N.Y.1996) (stating that the adequacy of representation requirement is met where all participants seek the same "make-whole" relief).

Defendants also argue that York, and presumably Pierce as well, cannot adequately represent the Retention Proposal signers because they did not sign the Retention Proposal. In cases where the class representatives did not sign a release or waiver and some of the class members did, conflicts are likely to arise and the class members have no incentive to vigorously litigate the invalidity of those releases. *See Stewart v. Avon Products, Inc.*, No. CIV. A. 98–4135, 1999 WL 1038338, at *4–5 (E.D.Pa. Nov.15, 1999); *Greeley v. KLM Royal Dutch Airlines*, 85 F.R.D. 697, 700–01 (S.D.N.Y.1980). In this case, it is quite probable that some of the proposed class members do not want to leave Pioneer and would thus prefer to keep their Retention Proposal agreement. The Court could not permit those individuals to be dragged into a lawsuit that they want no part of and may not be vigorously represented in.

One way to help relieve this conflict would be to certify the class pursuant to Rule 23(b)(3) and allow those individuals to "opt out." However, York and Pierce's claims would still not be typical of those individual's claims; and, moreover, a Rule 23(b)(3) certification would open the class up to pressures similar to those involved in bringing individual actions. Therefore, York and Pierce also fail the adequacy of representation requirement as to the Retention Proposal signers.

### C. Rule 23(b) Requirements

■ Federal Rule of Civil Procedure 23(b) requires that in order to maintain a class action one of three circumstances must be present. Of those three circumstances, Rule 23(b)(2) appears to provide the circumstance that is the most relevant to this case. It provides that a class action is maintainable if "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate

final injunctive relief or corresponding declaratory relief with respect to the class as a whole."

Courts have certified ERISA classes pursuant to Rule 23(b)(2) where the plaintiffs alleged a course of conduct that was generally applicable to the class. *See Fuller v. Fruehauf Trailer Corp.*, 168 F.R.D. 588, 602–03 (E.D.Mich.1996); *Jansen v. Greyhound Corp.*, 692 F.Supp. 1022, 1028 (N.D.Iowa 1986). In this case, Plaintiffs assert that Defendants have uniformly denied class members their benefits under the Change in Control Plan, forced class members to resign before asserting a claim for benefits, and breached their fiduciary duties to the class members. Based on this alleged conduct, Plaintiffs predominantly seek declaratory and injunctive relief. Any monetary relief Plaintiffs claim would flow directly and incidentally from that declaratory relief. The Court will therefore certify the class pursuant to Rule 23(b)(2).

### III. CONCLUSION

Plaintiffs' Motion for Class Certification (Clerk's No. 39) is granted in part and denied in part. The Court certifies a class pursuant to Federal Rule of Civil Procedure 23(b)(2) defined as:

> Pioneer Pay Band III and Pay Band IV employees who were, as of April 21, 2000, the date this action was filed, "Employees" as defined in Section 2.1(i) of the Pioneer Hi–Bred International, Inc. Change in Control Severance Compensation Plan For Management Employee ("Change in Control Plan" or "Plan"), excluding persons who signed the Retention Proposal and persons who received full Change in Control Plan benefits (including attorney fees and costs).

The Court designates Robert D. York and Dorothy A. Pierce as class representatives and Frank B. Harty, Gerald J. Newbrough, Michael W. Thrall, Julie M. Williamson, Daniel M. Reilly, and Larry S. Pozner as class counsel.

**IT IS SO ORDERED.**