**Michael R. LAFLAMME, Individually and on behalf of all others similarly situated, Plaintiff,**

v.

**CARPENTERS LOCAL # 370 PENSION PLAN and the Board of Trustees of Carpenters Local # 370 Pension Plan, Defendants.**

No. 01–CV–640.

United States District Court,
N.D. New York.

Feb. 10, 2003.

Cooper, Erving & Savage, Albany, NY, Phillip G. Steck, Of Counsel, Office of Edgar Pauk, Attorneys for Plaintiff, New York City, Edgar Pauk, Of Counsel.

Tocci, Parker & Tocci, LLP, Attorneys for Defendants, Albany, NY, Dominick Tocci, Jennifer T. O'Neil, Of Counsel.

*MEMORANDUM–DECISION and ORDER*

HURD, District Judge.

## I. INTRODUCTION

Plaintiff, Michael LaFlamme ("plaintiff"), individually and on behalf of all others similarly situated, filed a class action complaint against defendants, Carpenters Local # 370 Pension Plan ("pension plan" or "defendants") and the Board of Trustees of Carpenters Local # 370 Pension Plan ("board" or "defendants"), alleging violation of the minimum benefit accrual provisions of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1054(b).[1] As is pertinent here, plaintiff seeks the following relief: 1) "[d]eclare that the provisions of the Pension Plan ... violate ERISA"; 2) "[o]rder the Board of Trustees to reform the Pension Plan to bring it into compliance with ERISA, retroactive to the date ERISA first applied to the Plan, by applying each participant's highest applicable benefit rate to all years of service"; and 3) "[o]rder the Board of Trustees to recalculate all Class Members' pension benefits based on the terms of the Reformed Plan, and pay such recalculated benefits with interest." (Class Action Complaint, Docket No. 1, p. 8).

Plaintiff now makes this motion for class certification pursuant to Fed.R.Civ.P. 23. Defendants oppose. Oral argument was heard on November 22, 2002, in Albany, New York. Decision was reserved.

## II. FACTUAL BACKGROUND

Plaintiff worked as a carpenter from 1969 to 1980, 1984 to 1985, and 1992 to 1997. Being a member of Carpenters Local # 370, he was "covered" under defendants' defined benefit pension plan for all or certain parts of those years worked. Under the terms of the pension plan, as stated in the pension plan's "Summary Plan Description," the years or parts of years in which plaintiff was not covered are termed "[b]reak years," and having two consecutive break years is termed a "break in service." (Aff. of Karen G. Mahar, Docket No. 25, Exh. B, ¶ 34). If a covered worker incurs a break in service, the accrual rate for the payment of his benefits "freezes." The amount of pension benefits payable for the covered time work prior to the break in service is calculated on the basis of whatever the accrual rate is at the time of the break in service. Then, if the employee returns to covered employment, his benefits from that time forward are calculated at whatever the accrual rate is when he ceases to be covered again—in plaintiff's case, when the employee incurs another break in service.

Thus, by way of example, plaintiff accrued 9.3 credits (years of service) from 1969 to 1980, to be paid at an accrual rate of $11.00 per credited hour. He accrued 0.9 credits from 1984 to 1985, to be paid at an accrual rate of $20.00 per credited hour. And he accrued 3.29 credits from 1992 to 1997, to be paid at an accrual rate of $53.00 per credited hour. Under the pension plan, had he not incurred the two breaks in service, his pension benefit upon retirement would have been $714.97 per month. Instead, because he incurred such breaks, it is only $294.67 per month.

Plaintiff claims this freezing rule violates the minimum accrual rate that ERISA mandates. ERISA mandates that a defined benefit plan like the one at issue here must satisfy one of three minimum accrual rate schedules. *See* 29 U.S.C. §§ 1054(a)(1), 1054(b). The parties do not seem to dispute that the relevant benefit accrual rule in this case is what it is known as the "133⅓% rule." Under that rule, the minimum accrual standard is satisfied "if under the plan the accrued benefit payable at the normal retirement age is equal to the normal retirement benefit and the annual rate at which any individual who is or could be a participant can accrue the retirement benefits payable at normal retirement age under the plan for any later plan year is not more than 133⅓ percent of the annual rate at which he can accrue benefits for any plan year beginning on or after such particular plan year and before such later plan year." 29 U.S.C. § 1054(b)(1)(B). Plaintiff therefore seeks a

---

[1]. The "Second Claim for Relief," alleging violation of 29 U.S.C. § 1104(a)(1), has been dismissed by stipulation. *See* Docket No. 12.

declaration that the pension plan, through its use of the freezing rule, is in violation of this ERISA provision because the difference between the lowest and highest yearly accrual rates applicable to certain pension plan participants is greater than one-third. Plaintiff also seeks to have the pension plan reformed so that it is in compliance with ERISA, and then to have the pension benefits of all proposed class members recalculated under the reformed pension plan.

Plaintiff proposes as a class all covered employees who suffered a break in service and, consequently, had or will have their pension benefits reduced through use of the pension plan's freezing rule.[2] During discovery, plaintiff submitted the following interrogatory to defendants: "Identify all Plan participants, whether active or retired, with one hour of service under the Plan on or after ERISA's minimum standards first became applicable to the Plan, who receive, have received, or will receive pensions or whose survivor's will receive benefits based in part on one or more benefit rates that are lower than the highest benefit rate applicable to said participant at the time of their retirement." (Aff. of Jennifer T. O'Neil, Docket No. 24, Exh. A, Interrogatory # 2). After follow-up letters were sent seeking clarification, defendants' counsel sent to plaintiff's counsel a list of 176 names in answer to the interrogatory. (Notice of Motion, Affidavit and Exhibits in Support of Plaintiff's Motion for Class Certification, Docket No. 21, Exhibit E).

**2.** Plaintiff, in his Complaint, describes the proposed class in much more elegant terms, defining the proposed class as encompassing "all Plan participants, whether active or retired, their beneficiaries and Estates, with one hour of service under the Plan on or after ERISA's minimum standards first became applicable to the Plan, who receive, have received or will receive pensions or survivor's benefits based in part on one or more benefit rates that are lower than the highest rate applicable to said participant at the time of their retirement." *See* Class Action Complaint, Docket No. 1, ¶ 8. Notably, at oral argument, plaintiff for the first time raised the prospect that the proposed class should include not just those who have incurred breaks in service, but all plan participants because even those who have not suffered breaks may incur them in the

## III. DISCUSSION

Plaintiff has moved to certify as a class all plan participants who are or will be subject to the freezing rule by reason of having breaks of two years or more in service. "In determining the propriety of a class action, the question is not whether the plaintiff or plaintiffs have stated a cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 have been met." *Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 178, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974). Thus, when deciding a motion to certify a class, the allegations in the complaint are accepted as true. *See Shelter Realty Corp. v. Allied Maintenance Corp.,* 574 F.2d 656, 661 n. 15 (2d Cir.1978). "Rule 23 requires a litigant who would bring a class action to overcome two hurdles. First, he must satisfy all the conditions of 23(a) and then he must also convince the court that his action is appropriate under one of the three subdivisions of 23(b)." *Green v. Wolf Corp.,* 406 F.2d 291, 298 (2d Cir.1968); *see also Amchem Products, Inc. v. Windsor,* 521 U.S. 591, 614, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997). Both sections of Rule 23 will be addressed in turn.

### A. *Rule 23(a) Requirements*

Rule 23(a) mandates that a party moving for class certification prove four requirements: 1) the class is so numerous that joinder of all members is impracticable; 2) there are questions of law or fact common to the class; 3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and 4) the

future. *See* Transcript of Oral Argument, Docket No. 32, p. 7. Notwithstanding the failure to plead this as the proposed class anywhere in the record, the proposed class will not be broadened on such sheer speculation. Further, plan participants not having suffered a break in service, at present, unlike active plan participants who suffered breaks, have no potential of being affected by the freezing rule. Should a break be suffered, such plan participants' involvement right now in this suit is unnecessary, as they will be bound by the pension plan as is or as reformed, depending on the outcome of this litigation. Therefore, the proposed class is that which plaintiff mentioned in his complaint and moving papers—all plan participants incurring service breaks—and not the class mentioned for the first time at oral argument—all plan participants.

representative parties will fairly and adequately protect the interests of the class. Fed.R.Civ.P. 23(a). In common legal parlance, these requirements are generally referred to as numerosity, commonality, typicality, and adequacy of representation. *See General Telephone Co. v. EEOC,* 446 U.S. 318, 330, 100 S.Ct. 1698, 64 L.Ed.2d 319 (1980). Though the plaintiff, as the party seeking class certification, bears the burden of proof in demonstrating that the requirements have been met, *Caridad v. Metro–North Commuter Railroad,* 191 F.3d 283, 291 (2d Cir.1999), he is not required to make an extensive evidentiary showing, *Follette v. Vitanza,* 658 F.Supp. 492, 505 (N.D.N.Y. 1987), *vacated on other grounds,* 671 F.Supp. 1363, and courts are implored to construe liberally the Rule 23 requirements. *Eisen v. Carlisle & Jacquelin,* 391 F.2d 555, 563 (2d Cir.1968).

### 1. *Numerosity*

■ The first requirement that plaintiff must prove under Rule 23(a) is that the prospective class is so numerous that joinder is "impracticable." Fed.R.Civ.P. 23(a)(1). "Impracticable" in this context is not equivalent to "impossible," and plaintiff need not even precisely quantify the prospective class so long as he reasonably estimates the number therein. *See Robidoux v. Celani,* 987 F.2d 931, 935 (2d Cir.1993); *Verdow ex rel. Meyer v. Sutkowy,* 209 F.R.D. 309, 311 (N.D.N.Y.2002). The Second Circuit has held that a prospective class of forty or more raises a presumption of numerosity. *See Consolidated Rail Corp. v. Town of Hyde Park,* 47 F.3d 473, 483 (2d Cir.1995).

Here, plaintiff proposes as the class all participants in the plan who have had a break of two or more years in service. As noted, in response to a discovery interrogatory asking for the names of individuals who have suffered a break in service, defendants' counsel sent to plaintiff's counsel a list of 176 names. Plaintiff claims said list demonstrates that "there are at least 100 participants in the Plan who suffered a break in service and consequently have or will receive a reduced pension." (Plaintiff's Memorandum of Law in Support of Motion for Class Certification, Docket No. 22, p. 6). Defendants respond that this statement is "an inaccurate portrayal of a list prepared by defendants in response to plaintiff's interrogatory." (Defendants' Memorandum of Law in Opposition to Plaintiff's Motion for Class Certification, Docket No. 26, p. 5). In support of this allegation, defendants detail at length their position that some members on the list are barred by the statute of limitations and/or are not proper parties because of failure to exhaust the administrative remedies provided by the terms of the pension plan.

Defendants' position is not well taken. As an initial matter, it is noted that defendants belabor their points—with respect to the statute of limitations and exhaustion of remedies defenses—under all of the Rule 23 requirements. These issues will be considered under the discussion of whether plaintiff has satisfied Rule 23(a)(3), *infra.* More fundamental, though, is the insurmountable hurdle that acceptance of the argument presents to plaintiffs who must rely on information to which they are entitled but which is wholly within the control of parties adverse to them. Assuming that defendants are not arguing that they are immune from class actions in general, it is difficult to determine just how plaintiff is expected to ascertain the names of all proposed class members, short of knocking on doors and thereby incurring unjustifiable and unnecessary expense. Even if plaintiff had the time and wherewithal to undertake such a task, it is doubtful he could reach those employees outside the intimate circle of friends he made while employed who could possibly have a similar claim, unless he had access to a directory of covered employees spanning the last twenty-six years.

It is reasonable for plaintiff to thus rely on the 176–name list. The interrogatory was direct, asking, essentially, who had breaks in service, and it is entirely reasonable to estimate the size of the class based on the response. *See In re Livent, Inc. Noteholders Securities Litigation,* 210 F.R.D. 512, 515 (S.D.N.Y.2002) ("Plaintiffs may rely on reasonable inferences drawn from the available facts in order to estimate the size of the class"). Further, joining all prospective class

members as individual plaintiffs would be a waste of judicial and party resources and time, as would requiring them to bring individual actions, which has the added potential detriment of inconsistent verdicts. Thus, because the proposed class clearly exceeds that which the Second Circuit has deemed gives rise to a presumption of numerosity, *see Consolidated Rail,* 47 F.3d at 483, and because the information that would give rise to a reasonable belief as to who the class members are is within defendants' control, numerosity is established. *See Medicare Beneficiaries' Defense Fund v. Empire Blue Cross Blue Shield,* 938 F.Supp. 1131, 1142 (E.D.N.Y.1996) ("The impracticality of joinder of all members is also established conditionally, as the information needed to identify the class members is uniquely within the hands of the defendant").[3]

### 2. *Commonality*

■ The second requirement plaintiff must prove under Rule 23(a) is that the prospective class shares common questions of law or fact. Fed.R.Civ.P. 23(a)(2); *Marisol A. v. Giuliani,* 126 F.3d 372, 376 (2d Cir. 1997). While defendants are correct in assuming that if it is found that ERISA was indeed violated then the injuries to respective class members will differ, a finding of commonality is not precluded "by the possibility that the proof required to demonstrate 'injury' might be highly individualized." *In re Sumitomo Copper Litigation v. Credit Lyonnais Rouse Ltd.,* 262 F.3d 134, 141 (2d Cir.2001). In addition, while defendants "contend that there are numerous issues of law and facts [sic] relating to defenses that are uncommon to all the potential litigants," (Defendants' Memorandum of Law in Opposition to Plaintiff's Motion for Class Certification, Docket No. 26, p. 8), the fact remains

that whether any recovery can be had at all for any putative class member is completely dependent on one ultimate legal issue— whether the freezing rule places defendants in violation of the minimum accrual standards set forth in ERISA. *See Selby v. Principal Mutual Life Ins. Co.,* 197 F.R.D. 48, 57 (S.D.N.Y.2000) ("All the class members' claims will turn on one legal question: whether Principal's on-line review policies, which allow it to consider only the first listed diagnosis in a claim that lists multiple diagnoses, violate ERISA's prohibition on claims review practices that 'inhibit [ ] or hamper[ ]' the processing of claims"). All class members would most certainly advocate that the rule violates ERISA. Thus, because the overriding legal issue is common to all prospective class members, plaintiff has established commonality.

### 3. *Typicality*

■ The third requirement plaintiff must prove under Rule 23(a) is that the claims or defenses of the representative party or parties are typical of those of the prospective class. Fed.R.Civ.P. 23(a)(3). This requirement "is satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *In re Drexel Burnham Lambert,* 960 F.2d 285, 291 (2d Cir.1992), "irrespective of minor variations in the fact patterns underlying individual claims." *Robidoux,* 987 F.2d at 936–37. "In short, the test for typicality is not demanding." *Pyke v. Cuomo,* 209 F.R.D. 33, 42 (N.D.N.Y.2002) (quotations and citations omitted).

As was noted under the commonality requirement of Rule 23(a)(2),[4] all prospective

---

**3.** The fact that a class need only be defined at this stage, and can therefore later be narrowed or its members defined more precisely, effectively allays defendants' protests over the use of their answer to the interrogatory in forming the conclusion as to numerosity. *See* Fed.R.Civ.P. 23(c)(1) (stating that certification decision "may be altered or amended before the decision on the merits"); *Woe v. Cuomo,* 729 F.2d 96, 107 (2d Cir.1984) (stating that it is often permissible "for a district court to view a class action liberally in the early stages of litigation, since the class can

always be modified or subdivided as issues are refined for trial"). If defendants can prove that the answer submitted to the interrogatory is not a proper basis upon which to define the class, the class definition will be altered.

**4.** "The commonality and typicality requirements of Rule 23(a) tend to merge." *General Telephone Co. of Southwest v. Falcon,* 457 U.S. 147, 158 n. 13, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982); *see also Marisol A.,* 126 F.3d at 375.

class members would be alleging a violation of ERISA's minimum accrual standards, including plaintiff. All prospective class members' claims arise from the adoption of the freezing rule by defendants. The fact that one class member's claim may have arisen at a different time, or involved different benefit figures, is of no consequence. "Factual differences will not prevent class certification where the claims arise from a common legal theory." *Verdow,* 209 F.R.D. at 312.

Likewise, the defenses class members may be subject to are identical as well. Defendants claim that plaintiff's claim is subject, at least, to an exhaustion of remedies defense, and, at most, also to a statute of limitations defense. As defendants make their arguments with respect to those two defenses in sweeping terms applicable to many, if not all, prospective class members, the position that typicality is not satisfied with respect to defenses faced by class members is untenable. *See In re Agent Orange Product Liability Litigation,* 818 F.2d 145, 166–67 (2d Cir. 1987).

As noted, defendants vociferously contend that class certification is impermissible because some prospective class members may be subject to certain defenses, namely, being barred by the statute of limitations[5] or failing to exhaust administrative remedies.[6] The parties have briefed and argued, at times extensively, on the merits of these defenses. The class certification stage, however, is not the proper time to make an adjudication on the merits of those defenses. *See Becher v. Long Island Lighting Co.,* 164 F.R.D. 144, 149 (E.D.N.Y.1996). Whether those defenses are hurdles, and, if so, whether plaintiff has overcome the hurdles so presented, is more appropriately addressed in a dispositive motion on the merits, such as a motion to dismiss. *Id.* (refusing to rule on merits of exhaustion defense, but noting that this "should not be read as necessarily precluding a future attempt to limit the scope of the class, or barring any related motion").

Whether the fact that some prospective class members may in general be subject to defenses that others are not is relevant, however, at the class certification stage. *see In re Visa Check/MasterMoney Antitrust Litigation,* 280 F.3d 124, 149 (2d Cir.2001) (noting that affirmative defenses are considered insofar as how their application may affect manageability of class action); *see also Falcon,* 457 U.S. at 160, 102 S.Ct. 2364 (stating possible need to "probe behind the pleadings before coming to rest on the certification question"); *Pecere v. Empire Blue Cross and Blue Shield,* 194 F.R.D. 66, 69 (E.D.N.Y. 2000) (while inquiry into merits is to be avoided, determining certification "may involve some consideration of the factual and legal issues that comprise the plaintiff's cause of action") (quotations and citations omitted). Attention must be paid to the fact that many of the Rule 23 requirements are geared not just towards consolidation of legal issues, but also with an eye towards making the litigation process practical and as fair as possible. *See Marisol A.,* 126 F.3d at 378 (commonality, typicality, and adequacy of representation factors driven by concerns for fairness and efficiency). Defendants urge denial of class certification because two defenses may be raised against, and have different applicability to, certain class members. Defendants, however, did not seem to have

---

**5.** Because ERISA itself provides for no statute of limitations, the parties seem to agree that the six-year limitations period found in N.Y.C.P.L.R. § 213 governs this case. *See Miles v. New York State Teamster Conf. Pension Plan and Retirement Fund,* 698 F.2d 593, 598 (2d Cir.1983). The parties do seem to dispute, however, when that limitations period began to run.

**6.** The Second Circuit has recognized "the firmly established federal policy favoring exhaustion of remedies in ERISA cases." *See Kennedy v. Empire Blue Cross and Blue Shield,* 989 F.2d 588, 594 (2d Cir.1993); *Hector v. Wal–Mart Group Health Plan,* 100 F.Supp.2d 135, 136 (N.D.N.Y. 2000). Plaintiff claims, however, that exhaustion

has been met and, in any event, the requirement does not apply because the claims are statutory. Defendants claim that no claimant has fully exhausted administrative remedies, and that the exhaustion requirement does apply because plaintiff's claims, regardless of the garb in which plaintiff dresses them, are for benefits and not statutory claims. If exhaustion of remedies is found to apply, assuming such issue is raised in a dispositive motion, and only some prospective class members are found to have exhausted their remedies, sub-classes may have to be created. *See Medicare Beneficiaries' Defense Fund,* 938 F.Supp. at 1142 n. 6

much difficulty framing these defenses and, in some cases, grouping certain of the prospective members into categories under which the defenses may apply. (*See, e.g.,* Defendants' Memorandum of Law in Opposition to Plaintiff's Motion for Class Certification, Docket No. 26, p. 6) (arguing that the statute of limitations would most certainly bar "34 of the proposed class members").

Defendants later go on to argue that all prospective class members would, in any event, be barred by the statute of limitations because they knew or should have known of the freezing rule, which defendants allege has been in a pension plan booklet since 1976 and was made known to all more than six years prior to this case. With respect to the exhaustion of administrative remedies defense, defendants argue that none of the prospective class members exhausted the procedures set forth in the pension plan. If all prospective class members are indeed subject to the exhaustion of administrative remedies defense, and all failed to follow the exact same pension plan procedure in regard thereto, defendants should have no difficulty arguing the issue in a dispositive motion where the merits are more relevant. The same logic applies to the statute of limitations defense.

Further, both of these defenses assume contested points. The statute of limitations arguments assume that the accrual date for the limitations period is six years to the day prior to the filing of this lawsuit. When the limitations period begins to run, however, is a key issue on which the parties do not agree. The exhaustion of administrative remedies argument presupposes that such a requirement applies in this case, and that, if it did, plaintiff and prospective class members did not fulfill it. In short, these two defenses cannot at this stage, when deciding simply whether class certification is permissible, carry a great deal of weight because they compel resolution of issues more appropriate in dispositive motions. That different class members may be subject to different defenses—which is the generalized and more appropriate version of defendants' arguments—is not enough to defeat typicality, especially since defendants' own contentions seem to indicate the disposition of those defenses will, in fact, not be complex or, with respect to respective members, atypical at all.

#### 4. *Adequacy of Representation*

The fourth requirement plaintiff must prove under Rule 23(a) is that the representative parties will fairly and adequately protect the interests of the prospective class. Fed.R.Civ.P. 23(a)(4). When determining if this requirement is met, a plaintiff must make two showings: 1) that counsel for the prospective class is qualified, experienced, and generally able to conduct the litigation; and 2) that the class members, especially the representative party, do not have interests antagonistic to one another. *See In re Joint Eastern and Southern District Asbestos Litigation,* 78 F.3d 764, 778 (2d Cir.1996).

With respect to the first part of this requirement—the qualifications and experience of class counsel—there can be no dispute that counsel for the prospective class is adequately qualified. (*See, e.g.,* Aff. of Edgar Pauk, Docket No. 21, Exh. C). "Class counsel has pursued a number of similar [ERISA] actions, is experienced in this type of litigation, and has vigorously pursued [the prospective class] claims..." *See In re Buspirone Patent Litigation,* 210 F.R.D. 43, 58 (S.D.N.Y.2002) (antitrust case).

With respect to the second part of this requirement—that the class members do not have divergent interests to one another—defendants claim that if plaintiff, who is among the retired prospective class members, succeeds in this case, the pension plan as a whole would suffer financially, possibly resulting in a lack of increase or even decrease in the accrual rate to some members of the prospective class who are still accruing or capable of accruing benefits. Thus, according to defendants, "[b]ecause the additional liability imposed upon the Plan as a result of reformation will likely cause other plan participants to sustain an overall decrease in their monthly benefits at the time of retirement, it cannot be said that [plaintiff's] interests are identical to those of the proposed class, nor that all class members will derive a benefit from [plaintiff's] representation of the class." (Defendants' Memo-

randum of Law in Opposition to Plaintiff's Motion for Class Certification, Docket No. 26, p. 12).

This argument fails. Defendants cannot give any concrete evidence that such a reduction in future benefit rates will occur, or otherwise demonstrate anything short of possible inferences from possible occurrences that the interests of some members will be adversely affected by a judgment favorable to the class. "[T]he speculative suggestion of potential conflicts is insufficient to defeat class certification." *Rodolico v. Unisys Corp.,* 199 F.R.D. 468, 477 (E.D.N.Y.2001); *see also Banyai v. Mazur,* 205 F.R.D. 160, 165 (S.D.N.Y.2002); *Becher,* 164 F.R.D. at 152 ("While active and retired employees may have some divergent interests, in a lawsuit addressing benefit plans this disparity is insufficient to defeat class certification under Rule 23(a)(4)") (collecting cases); *Gruby v. Brady,* 838 F.Supp. 820, 827 (S.D.N.Y.1993). Prospective class members, both retired and active, share the same overall goals—to have the pension plan, through the use of the freezing rule, declared in violation of ERISA and to be made whole by plan reformation and recalculation of benefits. Thus, plaintiff has satisfied the requirements in Rule 23(a)(4).

### B. *Rule 23(b) Requirements*

As noted, in addition to satisfying all the requirements of Rule 23(a), a plaintiff, to succeed in a motion to certify a class, must also meet the requirements of one of the three subsections under Rule 23(b). Plaintiff claims any and all of the subsections are applicable to this case. Certification is appropriate under Rule 23(b)(2) and (b)(3).[7]

#### 1. *Rule 23(b)(2)*

■ This subsection permits class certification if "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole." Fed.R.Civ.P. 23(b)(2). In other words, a class will be certified if "broad, class-wide injunctive or declaratory relief is necessary to redress a group-wide injury." *Robinson v. Metro–North Commuter Railroad Co.,* 267 F.3d 147, 162 (2d Cir. 2001). As the Second Circuit in *Robinson* stated, "where class-wide injunctive or declaratory relief is sought in a(b)(2) class action for an alleged group harm, there is a presumption of cohesion and unity between absent class members and the class representatives such that adequate representation will generally safeguard absent class members' interests and thereby satisfy the strictures of due process. This presumption of cohesion and unity continues where incidental damages are also sought because entitlement to such damages does not vary based on the subjective considerations of each class member's claim, but flows directly from a finding of liability on the claims for class-wide injunctive and declaratory relief." *Id.* at 165 (internal quotations and citations omitted).

Despite defendants' contentions to the contrary, the primary relief sought in this case by plaintiff is declaratory and injunctive. Only one "Claim for Relief" is advanced, to wit, that the freezing rule in the pension plan violates ERISA's minimum accrual standards. (*See* Class Action Complaint, Docket No. 1, ¶ 22). The relief sought, in relevant part, is a declaration that the freezing rule violates ERISA, retroactive reformation of the pension plan so that it does comply with ERISA, and recalculation of benefits on the basis of the reformed pension plan. The latter two necessarily depend upon proof that the pension plan is in violation of ERISA, which is declarative relief. The second form of relief sought, retroactive reformation of the pension plan, does not seek damages. The only portion of relief where damages in the form of money is sought is the third form, for recalculation of benefits. This relief, however, can only be said to be incidental to the declaration that defendants' pension plan is in violation of the law. In other

---

**7.** As defendants point out in their moving papers, plaintiff's arguments with respect to Rule 23(b)(3) are sparse. However, at the very least all of the requirements of said rule are argued, expressly or by implication, in both plaintiff's and defendants' arguments under other requirements of Rule 23.

words, assuming a favorable verdict to the class, only because the pension plan is in violation of the law does the reformation and recalculation occur. The primary relief sought is the declaration that ERISA has been violated. All other relief flows from the declaratory relief and is incidental.

Defendants also argue that, because "no other plan participant has filed a formal action, or at the very least filed an appeal on the basis of plaintiff claims [sic] with the trustees," certification under Rule 23(b)(2) is inappropriate. (Memorandum of Law in Opposition to Plaintiff's Motion for Class Certification, Docket No. 26, p. 14). This argument, for lack of better words, misses the point. The ground upon which defendants have acted, or failed to act, that is generally applicable to the class is the application of the freezing rule to give lower benefit rates. Plaintiff is not challenging the appeals process, or the internal mechanisms in place to deal with claims for benefits. Plaintiff is instead challenging the enactment and application of the rule as violative of ERISA. Rule 23(b)(2) is satisfied.

### 2. *Rule 23(b)(3)*

■ Even if plaintiff had not satisfied the requirements of Rule 23(b)(2), he has satisfied those of Rule 23(b)(3). "Framed for situations in which class action treatment is not as clearly called for as it is in Rule 23(b)(1) and (b)(2) situations, Rule 23(b)(3) permits certification where class suit may nevertheless be convenient and desirable." *Amchem Products,* 521 U.S. at 614, 117 S.Ct. 2231. Under Rule 23(b)(3), it must be determined whether: 1) "questions of law or fact common to the members of the class predominate over any questions affecting only individual members"; and whether 2) proceeding by class action "is superior to other available methods for the fair and efficient adjudication of the controversy." *Moore v. Paine-Webber, Inc.,* 306 F.3d 1247, 1252 (2d Cir. 2002) (quoting Fed.R.Civ.P. 23(b)(3)).

Common questions predominate here. While the predominance requirement of Rule 23(b)(3) is more demanding than the commonality requirement of Rule 23(a)(2), issues applicable to the class will be said to "pre-

dominate if resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof." *Id.* "Common issues may predominate when liability can be determined on a class-wide basis, even when there are some individualized damages issues." *Visa Check/MasterMoney,* 280 F.3d at 139.

Here, the common issues of law—whether defendants' freezing plan violates ERISA's minimum accrual standards—and of fact— each prospective class member has or will be subject to the freezing rule—predominate over any individualized issues. Aside from the very general objections on statute of limitations and exhaustion of remedies grounds that may be disposed of in further motion practice, the only potential difference among the prospective plaintiffs deals with how much their benefits would end up being in the event that the class gains a favorable verdict. This does not require the expensive and time-consuming sifting through every prospective class member's relevant documentation. Indeed, defendants seem to already have a head start on any work necessary to the issues ripe for adjudication on summary judgment. The underlying yet forefront issue in this case is whether the pension plan's freezing rule violates the mandates of ERISA. Everything else springs from the answer to that question. Common questions predominate.

Further, a class action is the superior method by which to adjudicate this matter. The following are factors relevant to determining if the class action is the superior method by which to adjudicate a dispute: [1] "the interest of the members of the class in individually controlling the prosecution or defense of separate actions; [2] the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; [3] the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and [4] the difficulties likely to be encountered in the management of the class action." Fed. R.Civ.P. 23.

As no evidence of similar cases against defendants has been submitted, the second factor, dealing with already commenced litigation, is irrelevant. With respect to the third factor, no evidence has been submitted that this forum is improper in any way. Defendants maintain their offices in this federal district, and have admitted that venue is proper. (*See* Class Action Complaint, Docket No. 1, ¶ 4; Answer, Docket No. 4, ¶ 1).

With respect to the fourth factor, there is no indication that any difficulties that may arise are not readily manageable. As stated, *ad nauseum,* one legal issue—whether the pension plan's freezing rule violates ERISA—largely controls the outcome of this litigation. All other issues, in terms of claims and relief sought, are dependent upon the resolution of this issue. There may be some defenses applied to only certain defendants, and there may be differences in amounts received or to be received in the event of a favorable verdict for the class, but not so much so that the case will be difficult for the parties or court to handle. The attorneys are competent, the issues federal, and the system ready. Individualized evidence may be submitted, but only with the most general coating, such as evidence outlining dates of service breaks, and none is difficult to obtain. This evidence, moreover, seems to already be in the possession of defendants, so any prejudice incurred thereto is minimal.

Finally, with respect to the first factor, no evidence has been submitted that any prospective class member would rather have more control over his or her particular case. Indeed, noting that the preparation and research into the case has reached an appreciable depth on both sides, it seems to be to every interested party's advantage to proceed with the case in class action form. Thus, certification under Rule 23(b)(3) is also appropriate.

### C. *Notice/Opt–Out Rights*

■ Though the class could properly proceed under Rule 23(b)(2) or (b)(3), it is here certified under the former. *See, e.g., DeBoer v. Mellon Mortgage Co.,* 64 F.3d 1171, 1175 (8th Cir.1995) (noting that preference is to certify class under Rule 23(b)(2) or (b)(1)

over (b)(3)); *Kyriazi v. Western Electric Co.,* 647 F.2d 388, 393–95 (3d Cir.1981); *Bing v. Roadway Express, Inc.,* 485 F.2d 441, 447 (5th Cir.1973) (collecting authority). Noting the potential applicability of both subsections, however, some further discussion on issues regarding notice to absent class members of the pendency of the action is warranted.

#### 1. *Propriety of giving absent class members notice*

While the Supreme Court has held that individual notice is mandatory under Rule 23(c)(2) for all class actions certified under Rule 23(b)(3), *Eisen,* 417 U.S. at 177, 94 S.Ct. 2140, such holding has yet to be extended to require even general notice to absent class members in class actions certified under Rule 23(b)(2). *See Sosna v. Iowa,* 419 U.S. 393, 397 n. 4, 95 S.Ct. 553, 42 L.Ed.2d 532 (1975) (noting in class action proceeding under Rule 23(b)(2) that "problems associated with a Rule 23(b)(3) class action, which were considered by this Court last Term in [Eisen], are not present in this case"); *see also Frost v. Weinberger,* 515 F.2d 57, 65 (2d Cir.1975) (stating that pronouncement in *Eisen v. Carlisle & Jacquelin,* 391 F.2d 555, 564 (2d Cir.1968), that "notice is required as a matter of due process in *all* representative actions, and 23(c)(2) merely requires a particularized form of notice in Rule 23(b)(3) actions[,]" is "not regard[ed] ... as applying to class actions under Fed.R.Civ.P. 23(b)(2)") (emphasis added); *Wetzel v. Liberty Mutual Ins. Co.,* 508 F.2d 239, 256 (3d Cir.), *cert. denied,* 421 U.S. 1011, 95 S.Ct. 2415, 44 L.Ed.2d 679 (1975) (noting that due process does not mandate notice so long as adequacy of representation has been deemed sufficient).

That notice is not required, however, does not mean that it is not discretionary. Rule 23(d) grants broad power to require some form of notice to class members without restricting its breadth to only Rule 23(b)(3) actions. Fed.R.Civ.P. 23(d)(2); *Compare* Fed.R.Civ.P. 23(d) ("In the conduct of actions to which this rule applies, ...") *with* Fed.R.Civ.P. 23(c)(2) ("In any class action maintained under subdivision (b)(3), the court shall direct to the members of the class the

best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort"). While "experience teaches us that such notice may come late in the litigation," *Avagliano v. Sumitomo Shoji America, Inc.,* 614 F.Supp. 1397, 1400 (S.D.N.Y.1985) (citation omitted), such discretion is invoked at this stage of the litigation and notice is directed to be given. Even though due process is assumed to be satisfied when a class is certified under Rule 23(b)(2), apprising prospective class members of this Order and the general legal issues involved in this case and, most importantly, that their rights will be affected by resolution of this case, seems to be a reasonable measure unharmful to either side.

### 2. *Propriety of including opt-out rights in the notice*

■ The determination of the contents of or information provided in the notice will be left to the parties, *see infra,* hopefully to be resolved jointly. The notice may not include, however, opt out rights for the prospective class member receiving the notice. As a general rule, class actions certified under Rule 23(b)(2) do not require the offering of opt-out rights. *See Plummer v. Chemical Bank,* 668 F.2d 654, 657 n. 2 (2d Cir.1982) (acknowledging split on issue, but noting that "the tenor of the opinions in this Circuit has been that opting-out is permissible only in Rule 23(b)(3) cases"); *see also Kincade v. General Tire and Rubber Co.,* 635 F.2d 501,

506 (5th Cir.1981). As was the case with notice, courts do retain discretion to grant opt-out rights to absent class members pursuant to Fed.R.Civ.P. 23(d). The situations where discretion is exercised to grant such rights, however, are not present in this case.[8] In addition, any judgment obtained in this litigation will be binding on all pension plan participants. Together with the finding that the prospective class members' interests are adequately and ably represented, the conclusion is compelled that there is no basis for allowing opt-out rights.

### 3. *Mechanics of notice*

■ Ordinarily, plaintiff undertakes the tasks relevant to, and bears the cost of, providing notice to prospective class members. However, Rule 23(d) authorizes requiring a defendant's cooperation in identifying class members to whom notice is to be sent. *See Oppenheimer Fund, Inc. v. Sanders,* 437 U.S. 340, 355, 98 S.Ct. 2380, 57 L.Ed.2d 253 (1978). According to the Court in *Oppenheimer,* if a defendant can undertake the tasks associated with less expense and difficulty than could a plaintiff, the defendant may be ordered to provide notice. *Id.* at 356, 98 S.Ct. 2380. Nevertheless, plaintiff may still bear the costs of such tasks and such notice, unless the cost to the defendant in providing the notice is insubstantial, or the tasks involved are those performed by the defendant in the normal course of business, such as when notice can be provided via

---

8. The Second Circuit, under facts far different than are present here, has permitted opt-out rights for a class certified under Rule 23(b)(1)(B) because it was necessary to advance the fairness and efficiency of the litigation. *See County of Suffolk v. Long Island Lighting Co.,* 907 F.2d 1295, 1305 (2d Cir.1990). Other courts, primarily dealing with discrimination class actions, have allowed opt-out rights where the purposes of Rule 23(b)(2) certification—cohesiveness of the class—cease to exist. Such allowances are largely based on the notion that class unity and homogeneity are no longer considerations once discrimination liability are determined. All that is left to determine is damages, and in instances where that damage is back pay, highly individualized determinations not amenable to class treatment need to be made. *See Eubanks v. Billington,* 110 F.3d 87, 95 (D.C.Cir.1997); *see also Thomas v. Albright,* 139 F.3d 227, 236

(D.C.Cir.1998) (noting that opt-out rights under hybrid certification, i.e., where certification is appropriate under both Rule 23(b)(2) and (b)(3), are appropriate where "assumption of cohesiveness" underlying (b)(2) certification is unjustified as to individual damages claims, or where claims of "individual dissidents" are different from the claims of the class). Thus, while certification is appropriate as to liability in those situations, it is not as to damages. *See McReynolds v. Sodexho Marriott Services, Inc.,* 208 F.R.D. 428, 448–49 (D.D.C.2002). Here, no such highly individualized concerns over damages is present. Assuming the class prevails, it is true that some specific evidence will need to be eventually adduced to determine the recalculation of benefits, but this form of individualized determination is much more limited, and is more akin to restitution than it is to money damages.

a periodic mailing to prospective class members. *Id.* at 358–59, 98 S.Ct. 2380.

Though *Oppenheimer* dealt with individualized mandatory notice under Rule 23(c)(2) for a class certified under Rule 23(b)(3), and not with discretionary notice for a class certified under Rule 23(b)(2), its general wisdom has applicability here. Defendants are in sole possession of the information relevant to the prospective class members. They have extensive records detailing such information for all pension plan participants, and, as noted, had no difficulty answering the interrogatory by divulging the names of the participants that, at this point, are certified as class members. In other words, neither great time nor expense need be expended in determining who is entitled to notice. Accordingly, noting both the strong presumption of placing the costs of providing notice on plaintiff and the fact that the information needed to give such notice is within the control of defendants, 75% of the costs, if any, associated with providing notice will be borne by plaintiff. This cost should be very minimal.

Defendants therefore have two options—they can provide the notice or they can cooperate with plaintiff by giving him the information necessary to provide the notice. *See Gates v. Dalton,* 67 F.R.D. 621, 633 (E.D.N.Y.1975) (plaintiff may use at his own expense defendant's already established lines of communication with prospective class members). Once defendants make that choice, however, it is up to the party providing notice to determine if the notice given will be individual or general. In the event defendants choose to themselves provide notice, and that said notice will be general, for example, it would be permissible to give general notice by way of inserting it in an already periodic mailing sent to pension plan participants. The contents of the notice shall be the same regardless of whether it is individual or general. The only difference should be that individual is directed or addressed to a specific person, while general is directed to the group as a whole.

Defendants are first ordered to make an election on or before February 20, 2003, as to whether they or plaintiff will be charged with undertaking the tasks relevant to providing notice to the prospective class. After such an election is made known to plaintiff, the parties are then ordered to confer on or before February 27, 2003. At such conference, the party who is undertaking the tasks relevant to providing notice to the prospective class shall inform the other of whether such notice will be individual or general. Then, the parties shall work towards the goal of submitting for approval a joint order setting forth the contents of the proposed notice. In the event the parties cannot agree on the contents of the proposed notice, they are directed to submit separate proposed notices, keeping in mind the already determined party undertaking the tasks relevant to (at defendants' choosing) and the form of (general or individual) the notice. In any event, the joint or separate proposed notices must be submitted to the court for approval on or before March 10, 2003.

## IV. *CONCLUSION*

Plaintiff has met the class certification requirements of Fed.R.Civ.P. 23. He has proven the Rule 23(a) requirements of numerosity, commonality, typicality, and adequacy of representation, as well as two of the three subsections under Rule 23(b). Class certification is therefore appropriate. The parties are ordered to comply with the directives given concerning notice to absent class members.

Accordingly, it is

ORDERED that

1. Plaintiff Michael LaFlamme's motion for class certification is GRANTED; and

2. The class here certified is all covered pension plan participants, both active or retired, or their beneficiaries or estates, that have suffered a break or breaks of service, as that phrase is defined by the terms of the pension plan, and have consequently had, are having, or will have their benefit accrual rates frozen for the period of covered employment preceding said break or breaks in service.

IT IS SO ORDERED.